EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Propietarios de Playa Húcares, Inc.<br><br>    Demandante Peticionaria<br><br>             v.<br><br>Luis Fernando Rodríguez, Jazmín Saldivar Alejandro y la Soc. Legal de Gananciales Compuesta por ambos<br><br>    Demandados Recurridos | Certiorari<br><br>2006 TSPR 30<br><br>166 DPR _____ |

Número del Caso: CC-2003-0650

Fecha: 24 de febrero de 2006

Tribunal de Apelaciones:

Circuito Regional VI Caguas/Huamcao/Guayama

Juez Ponente:

Hon. Ismael Colón Birriel

Abogado de la Parte Peticionaria:

Lcdo. José Ramón Olmo Rodríguez

Abogado de la Parte Recurrida:

Lcdo. Antonio Pita Matienzo

Materia: Entredicho Provisional, Interdicto Provisional y Permanente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Propietarios de
Playa Húcares, Inc.

    Demandante Peticionaria

        v.                            CC-2003-650

Luis    Fernando    Rodríguez,
Jazmín Saldivar Alejandro y la
Soc.   Legal   de   Gananciales
compuesta por ambos
    Demandados Recurridos

SENTENCIA

San Juan, Puerto Rico, 24 de febrero de 2006.

Mediante el presente recurso, se solicita de este Tribunal la revocación de una sentencia emitida por el Tribunal de Apelaciones, mediante la cual modificó y así confirmó un dictamen del Tribunal de Primera Instancia que declaró no ha lugar una demanda sobre *injuction*, presentada por la aquí peticionaria, Asociación de Propietarios de Playa Húcares, Inc. La allí demandante, aquí peticionaria, solicitó al foro primario le prohibiera a los demandados-recurridos actuar en contravención con ciertas servidumbres en equidad. Se confirma la sentencia recurrida.

I

El 3 de octubre de 1990, se otorgó ante el Notario Francisco Alonso Rivera, la escritura número doscientos sesenta (260) sobre *Constitución de Condiciones Restrictivas de Uso y Limitaciones sobre la Construcción y Declaración de Derechos*. El 29 de octubre de 1990, la misma se presentó en el Registro de la Propiedad de Humacao y se inscribió el 13 de febrero de 1991, al folio 205 del tomo 181, finca Núm. 365. Mediante esta escritura, el desarrollador y dueño del proyecto creó unas servidumbres en equidad gravando la finca matriz de la cual se segregaron ciento treinta (130) solares que componen la Urbanización Mansiones de Playa de Húcares, en adelante la Urbanización, en Naguabo, Puerto Rico. De esta forma, impuso sobre los ciento treinta (130) solares unas restricciones de uso y limitaciones sobre la construcción. Además, se creó la Asociación de Propietarios de Playa de Húcares, Inc., en adelante la Asociación, con el propósito de cumplir con las obligaciones, responsabilidades y mandatos delegados, para el beneficio de los propietarios y residentes de la Urbanización.[1]

En lo pertinente, se constituyeron las servidumbres en equidad siguientes:

LIMITACIONES SOBRE LA CONSTRUCCIÓN

(a)<u>Aprobación</u>: Toda construcción que se realice en este proyecto en primer lugar deberá cumplir con la reglamentación que para un distrito de zonificación R-1, requiere la Administración de Reglamentos y Permisos y las agencias gubernamentales concernidas, así como del comité

---

[1] Apéndice del recurso de <u>Certiorari</u>, págs. 33 y 96.

de Arquitectura de la Asociación de Propietarios de Playa Húcares y obtener sus respectivas aprobaciones.

(........)

(c)<u>Área de Construcción</u>: Las edificaciones a construirse serán de tipo residencial teniendo como área de piso básica de mil quinientos (1,500) pies cuadrados, mínimo.

(........)

LIMITACIONES DE USO

(a)<u>Uso</u>: Los solares del proyecto serán con fines residenciales exclusivamente.  No se permitirán el uso comercial o para servicios profesionales.

(........)

(c)<u>Arrendamiento</u>: En caso que algún propietario desee alquilar su propiedad deberá ser con un término no menor de una semana.[2]

También, mediante esta escritura, se creó un Comité de Control Arquitectónico. En cuanto a su creación, propósito y composición, se expresó lo siguiente:

<u>Comité de Control Arquitectónico</u>

(A): La compareciente por la presente crea un comités [sic] con el propósito de reglamentar las edificaciones, cambios estructurales, modificaciones, alteraciones, estructuras con fines residenciales o con fines comunales, la creación de áreas recreativas, el desarrollo de los mismos en cuanto a ornamentación y plantación.
(B) <u>Composición</u>: El comité se conocerá como "Comité de Control Arquitectónico", el cual será compuesto de no menos de tres miembros, preferiblemente ingenieros ó [sic] arquitectos, los cuales crearan [sic] unas directrices que sirvan de guías para las edificaciones, residencias privadas, las de uso común y las públicas. La compareciente una vez nombrados los miembros circulara [sic] sus nombres y direcciones entre los propietarios e indicara

---

[2] Íd., págs. 31-33.

[sic] en donde deberán radicarse los planos para su aprobación.

(C) Una vez radicadas [sic] los planos con el comité estos deberán dentro de los próximos treinta (30) días evacuar un resultado. Si el resultado fuese adverso al propietario [sic] este [sic] podrá recurrir a la Junta en plena [sic] donde expondrá sus razones, [sic] la decisión de la Junta será final.[3]

El 12 de julio de 1992, la Asociación promulgó y adoptó el Reglamento de Propietarios de Playa Húcares Inc., el cual fue ratificado en la misma fecha mediante asamblea extraordinaria.[4] En el referido Reglamento, se adoptaron textualmente las condiciones restrictivas de uso y las limitaciones sobre la construcción, contenidas en la escritura constitutiva de servidumbres en equidad.[5]

El 4 de junio de 1999, mediante escritura pública sobre compraventa, otorgada ante el Notario Público Raúl Maldonado Vázquez, el señor Luis F. Rodríguez Ramos y su esposa, la señora Jazmín Saldivar Alejandro, en adelante los esposos, adquirieron el solar marcado como C-42 de la Urbanización. Posteriormente, el 25 de enero de 2001, la Administración de Reglamentos y Permisos, en adelante A.R.P.E., le otorgó a los esposos permiso de uso para una vivienda unifamiliar de dos (2) plantas, la cual se construyó en el solar C-42 de la Urbanización.[6]

---

[3] Íd., págs. 39-40.

[4] Íd., págs. 42-55, 97.

[5] Íd.

[6] Íd., pág. 57.

El 29 de marzo de 2001, los esposos Rodríguez Saldivar presentaron ante A.R.P.E. los planos de construcción de una vivienda familiar, al nivel del sótano de la residencia a ser ubicada en el solar C-42 de la Urbanización. El 30 de marzo de 2001, la Junta de Directores de la Asociación celebró una reunión para escoger las posiciones directivas dentro de la nueva Junta. Surge de la minuta de esta reunión, que en esta misma fecha se reactivó el Comité de Arquitectura de la Asociación, para trabajar con las nuevas construcciones. No obstante, no surge de la minuta que se circularon los nombres y direcciones de los integrantes del Comité ni que se hubiere especificado donde se radicarían o presentarían los planos para su aprobación.[7]

El 2 de abril de 2001, A.R.P.E. autorizó el permiso de construcción relacionado a los planos presentados por los esposos el 29 de marzo de 2001, y lo expidió el 1[ero] de mayo del mismo año.  El 5 de julio de 2001, A.R.P.E. aprobó un permiso de uso para una vivienda al nivel del sótano, localizada en la estructura construida por los esposos Rodríguez Saldivar. Dicho permiso fue expedido el 10 de julio del 2001.

Inconforme con la construcción realizada por los esposos Rodríguez Saldivar y por el uso al que fuera destinada la residencia, el 7 de agosto de 2001, la Asociación presentó una demanda sobre entredicho provisional, interdicto preliminar y permanente, en contra

---

[7] Íd., pág. 157.

de los esposos Rodríguez Saldivar. En síntesis, la Asociación alegó que los esposos Rodríguez-Saldivar no cumplieron con los reglamentos vigentes de la Asociación al no haber sometido los planos de la estructura a su Comité Arquitectónico para su revisión y aprobación; y al utilizar la propiedad para arrendar un apartamento, contrario a las condiciones restrictivas de uso (servidumbres en equidad), constituidas mediante la escritura pública número doscientos sesenta (260) de 3 de octubre de 1990, antes mencionada.[8]

Por su parte los esposos Rodríguez Saldivar contestaron la demanda e incoaron reconvención en contra de la Asociación. Alegaron, que ni en la escritura pública de constitución de servidumbres en equidad, ni en el Reglamento de la Asociación de Residentes surgía restricción alguna que les impidiera la construcción de una segunda unidad de vivienda y arrendar la misma. También alegaron, que al momento de obtener los permisos de A.R.P.E. de construcción y uso de su propiedad, el Comité Arquitectónico era inexistente e inoperante; y que las enmiendas al Reglamento de la Asociación de Residentes, las cuales se aprobaron el 26 de agosto de 2001 y que prohibían el arrendamiento de una segunda planta de vivienda, eran nulas, ya que no podían modificar, enmendar o revocar ninguna de las cláusulas de la escritura constitutiva de las restricciones en equidad. Finalmente, alegaron que las enmiendas al Reglamento,

---

[8] Íd., págs. 21- 22.

aprobadas el 26 de agosto de 2001, no se les podía aplicar retroactivamente.

Tras varios incidentes procesales, se llevó a cabo la conferencia con antelación al juicio y tras las partes haber manifestado en corte abierta la ausencia de controversia real sobre los hechos, el 24 de septiembre de 2002, el Tribunal de Primera Instancia se pronunció declarando sin lugar la demanda.[9] Determinó que: (1) a tenor con las restricciones en equidad y con el Reglamento de Zonificación de Puerto Rico[10], es permitida una segunda unidad de vivienda independiente en los solares de la Urbanización en cuestión; (2) no existía impedimento para que dicha unidad fuese arrendada, siempre y cuando cumpliese con el término establecido en la restricción en equidad[11]; (3) las

---

[9] Íd., págs. 95- 106.

[10] Reglamento de zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 6211, Departamento de Estado, 5 de noviembre de 2000, pág. 68. Este Reglamento dispone, en lo pertinente, lo siguiente:

> 11.01- Propósitos del Distrito R-1- Este distrito se establece para clasificar terrenos para facilitar, según se justifique, las necesidades del crecimiento urbano en diferentes tipos de viviendas o para preservar el carácter residencial de áreas desarrolladas o que puedan desarrollarse en solares de novecientos (900) metros cuadrados o más.
>
> 11.02- Usos en Distritos R-1
> 1. Casas de una familia en solares con cabida de 900 metros cuadrados mínimo.
> 2. Vivienda adicional en segunda planta
> (........)

[11] Tal como citamos anteriormente, las restricciones en equidad establecían que en caso de que algún propietario

enmiendas hechas al Reglamento de Propietarios el 26 de agosto de 2001 no podían aplicarle retroactivamente a los demandados; y (4) al momento en que la parte demandada radicó sus planos ante A.R.P.E., para obtener los permisos correspondientes, el Comité Arquitectónico no estaba en operación o funcionamiento, por lo que no podía imputársele a los demandados su incumplimiento con las restricciones en equidad y el Reglamento de la Asociación[12]. Finalmente, el foro primario ordenó al Comité Arquitectónico que aprobase los planos de construcción presentados por la parte demandada y le impuso a la Asociación las costas y gastos del litigio.

Inconforme con tal dictamen, la Asociación acudió ante el anterior Tribunal de Circuito de Apelaciones, mediante recurso de apelación. El foro apelativo intermedio modificó, y así, confirmó el dictamen del Tribunal de Primera Instancia. Concluyó que la construcción al nivel del sótano, realizada por los apelados, los esposos Rodríguez Saldivar, fue conforme a los parámetros exigidos por A.R.P.E., por lo cual no hacía falta ninguna aprobación ulterior por el Comité Arquitectónico de la Asociación.[13] Determinó específicamente lo siguiente:

---

desease alquilar su propiedad, debería ser por un término no menor de una semana.

[12] El Reglamento de la Asociación establece, que los propietarios, antes de iniciar una construcción y previo a que se sometan los planos a A.R.P.E, deben obtener el visto bueno del Comité de Arquitectura.

[13] Apéndice del recurso de Certiorari, pág. 171.

En el caso de autos, la edificación hecha por los apelados cumplió con las exigencias mínimas que la ARPE impone a una zonificación R-1, ya que la construcción fue hecha en un terreno de 986.93 metros cuadrados (10,623 pies cuadrados), con un área bruta de piso de 237.01 metros cuadrados (2551.16 pies cuadrados). Ésta área de construcción básica cumple con las restricciones establecidas en la servidumbre en equidad (el mínimo de 1,500 pies cuadrados). El apartamento al nivel de sótano tiene un área de superficie de 75.46 metros cuadrados (812.25 pies cuadrados), definitivamente esta es un área menor a los 1,500 pies cuadrados establecidos como mínimo en la servidumbre en equidad; no obstante, este no es el área de superficie a examinar para determinar cual es el área básica de construcción.

Los apelados consiguieron todos los permisos requeridos por las agencias gubernamentales para realizar la construcción. En ese momento el Comité Arquitectónico no estaba operante, razón por la cual, los apelados estaban imposibilitados de presentar los permisos y los planos a dicho Comité. Por ende, no se puede penalizar a los apelados por la omisión o incumplimiento de la Asociación, de las Restricciones en Equidad y en el Reglamento que ellos mismos están utilizando para atacar la construcción de los apelados. Es patente que la Asociación conocía de la deficiencia de sus alegaciones cuando reactivó el Comité el 30 de marzo de 2001 y realizó enmiendas al Reglamento el 26 de agosto de 2001. Debido a lo anterior, el TPI evaluó los requisitos mínimos que impone la ARPE para aprobar una construcción y a renglón seguido concluyó que los apelados habían cumplido con las exigencias de ley. La construcción realizada cumple con todos los parámetros establecidos por ley.[14]

La Asociación, inconforme con la decisión del foro intermedio apelativo, acude ante nos mediante el presente recurso de *certiorari*. Alegó la comisión de los errores siguientes:

**Erró el Tribunal de Circuito de Apelaciones al concluir que la construcción de un apartamento en el sótano de una casa de dos pisos no viola**

---

[14] Íd., pág. 165.

**la servidumbre en equidad operante en la Comunidad Playa Húcares.**

**Erró el Tribunal del Circuito de Apelaciones al concluir que la servidumbre en equidad operante permite el alquiler de un apartamento en el sótano de la casa.**

**Erró el Tribunal del Circuito de Apelaciones al concluir que la parte recurrida podía construir un apartamento en el sótano sin solicitar permiso del Comité de Arquitectura de Playa Húcares.**

Los recurridos sostienen haber cumplido fielmente con las servidumbres en equidad, pues ni de éstas ni del Reglamento surge que la intención del desarrollador fue prohibir que hubiese más de una unidad de vivienda por solar. Además, añadió, que aunque las residencias tenían que ser para fines residenciales exclusivamente, sí podían ser alquiladas, pues así surge claramente de las servidumbres en equidad y del Reglamento de Propietarios, por lo que dicho arrendamiento no constituye un uso comercial. Respecto al requisito de presentar los planos ante el Comité Arquitectónico antes de presentarlos ante A.R.P.E., los recurridos alegaron que no los presentaron ante el Comité porque el mismo no estaba en funcionamiento. También le imputó a la Asociación haber incumplido su obligación de circular entre los propietarios, los nombres y direcciones de los miembros del Comité, y el no haber establecido guías y parámetros de dónde presentar los planos para aprobar las obras.[15]

---

[15] Todos los argumentos de los recurridos surgen del <u>Alegato de la Parte Recurrida</u>, presentado el 8 de diciembre de 2003.

II

Las servidumbres en equidad consisten de unas restricciones y condiciones, constituidas unilateralmente por el urbanizador, que limitan el uso de terrenos y edificaciones, operan para beneficio de los presentes y futuros propietarios, e imponen cargas o gravámenes especiales, como parte de un plan general para el desarrollo y preservación de una urbanización residencial.[16] Éstas limitan las facultades de los futuros adquirentes.[17] En nuestra jurisdicción, las servidumbres en equidad se utilizan con frecuencia "para establecer restricciones a la propiedad a fin de asegurar que la configuración arquitectónica o urbanística de un determinado proyecto privado se conserve dentro de los parámetros establecidos".[18] Se ha reconocido que las cláusulas restrictivas que gravan las urbanizaciones residenciales tienen como finalidad preservar el valor, la belleza, la comodidad y la seguridad del reparto residencial.[19] Esto es así, ya que las mismas limitan las facultades de los futuros

---

[16] Res. Parkville v. Díaz, Palou, 2003 T.S.P.R. 69, 2003 J.T.S. 73, 159 D.P.R. ___ (2003); Asociación de Vecinos de Villa Caparra, Inc. v. Iglesia Católica, 117 D.P.R. 346 (1986).

[17] Asociación de Vecinos de Villa Caparra, Inc. v. Iglesia Católica, supra.

[18] M. J. Godreau y A. I. García Saúl, Servidumbres y Conservación, 67 Rev. Jur. U.P.R. 249, 301 (1998), citado en Res. Parkville v. Díaz, Palou, supra.

[19] Res. Parkville v. Díaz, Palou, supra; Sands v. Ext. Sagrado Corazón, Inc., 103 D.P.R. 826 (1975).

adquirentes de los solares y de las viviendas en cuanto a hacer obras nuevas, efectuar cambios en las ya hechas, y delimitar los usos a los que puede ser destinada una propiedad.[20]

Para que las servidumbres en equidad sean válidas y eficaces, se requiere: (1)que las limitaciones referidas sean razonables; (2)que se establezcan como parte de un plan general de mejoras; (3)que consten de forma específica en el título de la propiedad; y, (4)que se inscriban en el Registro de la Propiedad.[21] Por lo cual, para que una propiedad inmueble sea gravada válidamente mediante una servidumbre en equidad, sus cláusulas restrictivas deben constar en una escritura pública, y, según mencionamos, debe inscribirse en el Registro de la Propiedad.[22]

Las servidumbres en equidad son consideradas como un contrato entre las partes, ya sea porque éstas acuerdan gravar sus propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre las mismas, o porque quienes adquieren posteriormente la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a éstas.[23] Por lo cual,

---

[20] Íd.

[21] Res. Parkville v. Díaz, Palou, *supra*; Asoc. Vec. Urb. Huyke v. Bco. Santander, 2002 T.S.P.R. 97, 2002 J.T.S. 104, 157 D.P.R. ___(2002); Asociación de Vecinos de Villa Caparra, Inc. v. Iglesia Católica, *supra*.

[22] Res. Parkville v. Díaz, Palou, *supra.*

[23] Íd.

adquieren un rango de contratos privados de naturaleza real, ya que, una vez son inscritas en el Registro de la Propiedad, constituyen derechos reales oponibles *erga omnes*, creando entre los predios afectados una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización.[24]

Los dueños de predios sujetos a servidumbres en equidad pueden impedir violaciones a las limitaciones impuestas, y hacer efectivos sus derechos a través del recurso de *injunction*.[25] Una vez reconocida la validez y vigencia de las cláusulas restrictivas de una servidumbre en equidad en un caso particular, "los tribunales deben hacer cumplir a cabalidad los propósitos del acuerdo al que las partes han aceptado someterse al adquirir la propiedad gravada".[26] Esta norma persigue preservar la autonomía de la voluntad de las partes, reflejada en las cláusulas restrictivas de la servidumbre en equidad. Por lo tanto, los tribunales no tienen facultad para obviar dicha voluntad por criterios ajenos a ésta, salvo que sea contraria a la ley, a la moral o al orden público.[27] Valga recordar, que en el ámbito de

---

[24] Íd; *Asociación de Vecinos de Villa Caparra, Inc. v. Iglesia Católica*, *supra*.

[25] Íd.

[26] *Res. Parkville v. Díaz, Palou*, *supra*.

[27] Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372. Este artículo lee de la forma siguiente:

las obligaciones y los contratos, es doctrina fundamental que cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no se recurrirá a reglas de interpretación, sino que se respetará el sentido literal de sus cláusulas.[28]

Las servidumbres en equidad pueden extinguirse o modificarse en los siguientes casos:

> (1)por acuerdo de los interesados; (2)por efecto del tiempo o por realizarse la condición si así se constituyeron; (3)por confusión; (4)por renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre; (5)por expropiación forzosa si los gravámenes son incompatibles con el uso público del inmueble expropiado; y (6)cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta imposible alcanzar los fines que perseguía la servidumbre.[29]

III

Nos corresponde determinar si el recurrido actuó conforme a las servidumbres en equidad. Específicamente, si actuó en contravención con las condiciones restrictivas al construir una segunda unidad de vivienda en el sótano de una casa de dos pisos, hacer tal construcción sin solicitar el

---

"Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."

[28] Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471.

[29] Res. Parkville v. Díaz, Palou, *supra*; Asociación de Vecinos de Villa Caparra, Inc. v. Iglesia Católica, *supra*, pág. 354.

permiso del Comité Arquitectónico, y arrendarla. Atenderemos los tres errores en conjunto.

El anterior Tribunal de Circuito de Apelaciones confirmó la determinación del Tribunal de Primera Instancia, declarando así sin lugar la demanda de *injuction* presentado por la Asociación. Determinó que el recurrido no violó las servidumbres en equidad existentes. Le asiste razón. Veamos

Mencionamos que uno de los requisitos para que las servidumbres en equidad sean válidas y eficaces es que se inscriban en el Registro de la Propiedad. Una vez inscritas, éstas le son oponibles a todos los futuros adquirentes. La persona interesada en adquirir una propiedad sujeta a unas servidumbres en equidad, está limitada a las restricciones inscritas. La parte recurrida adquirió una propiedad sujeta a ciertas servidumbres en equidad y de los hechos que se desprenden de autos, no surge que sus actuaciones violen las restricciones inscritas existentes.

En la escritura pública constitutiva de las servidumbres en equidad constan las limitaciones sobre la construcción, y de éstas no surge impedimento alguno que le prohíba a los recurridos haber construido una segunda vivienda en el sótano de la casa de su propiedad. Sí le requería que la construcción cumpliese con la reglamentación que para un distrito de zonificación R-1 exige A.R.P.E. y con unas medidas específicas mínimas, mas no prohíbía o restringía el derecho del propietario de construir una

segunda vivienda en el sótano.[30] No surge de nuestro expediente que el desarrollador tuvo la intención de plasmar en la Escritura Publica Constitutiva de Servidumbres en Equidad que la definición o requisitos correspondientes a un distrito de zonificación R-1 se congelaran de forma tal que operasen únicamente como prescribía el Reglamento de Zonificación al momento de constituirse tal documento público. Por el contrario, se desprende de la referida servidumbre en equidad, que la intención del desarrollador fue que todo propietario tendría que "cumplir con la reglamentación que para un distrito de zonificación R-1, requiere la Administración de Reglamentos y Permisos y las agencias gubernamentales concernidas"[31]. Por lo tanto, tenían que cumplir con los requisitos que dispone A.R.P.E. y las agencias concernidas al momento de solicitar los permisos para la construcción.

Además de exigir los permisos correspondientes de A.R.P.E., las servidumbres en equidad requieren que el Comité Arquitectónico apruebe los planos de la construcción. Si bien es cierto que los recurridos no cumplieron con esta limitación, no se debió a mero incumplimiento voluntario. Surge de autos que el Comité se reactivó el 30 de marzo de 2001, un día después de haber, los esposos Rodríguez Saldivar, presentado ante A.R.P.E. los planos de la vivienda

---

[30] Surge de los hechos mencionados que los recurridos le solicitaron a A.R.P.E. los permisos correspondientes, los cuales fueron otorgados.

[31] Apéndice del recurso de Certiorari, pág. 31.

al nivel del sótano. El Tribunal de Primera Instancia determinó como cuestión de hecho, que al momento de la reactivación del Comité, no se circularon ni los nombres ni direcciones de sus integrantes, ni indicaciones de dónde presentar los planos para su evaluación.

La Asociación pretende que los propietarios de los solares en la Urbanización cumplan con presentar los planos para la aprobación del Comité, cuando no se han ocupado de notificar quiénes lo componen ni qué directrices o procedimiento deben seguir para cumplir con tal restricción. De notificarse los integrantes del Comité y sus direcciones, y de establecerse ciertas directrices para el procedimiento de aprobación de planos, los propietarios de los solares de la Urbanización le tendrán que dar cumplimiento. Por lo cual, no podemos obligar a los recurridos a dar cumplimiento a una servidumbre en equidad y de esta forma limitar su derecho propietario, cuando la entidad encargada de darle cumplimiento a la misma no ha cumplido su propia responsabilidad.

En cuanto a las limitaciones de uso, surge que las servidumbres en equidad permiten expresamente el arrendamiento de las propiedades de la Urbanización. Los dueños pueden arrendar sus propiedades, siempre y cuando se utilicen para fines residenciales exclusivamente y por un término no menor de una semana. No es correcto el planteamiento de la peticionaria de que el alquiler que pretenden los recurridos está vedado por la servidumbre en

equidad. El arrendamiento está permitido y la servidumbre en equidad no establece otras restricciones que las mencionadas.

Los recurridos alegan que enmiendas al Reglamento de la Asociación de Residentes, aprobadas el 26 de agosto de 2001, no son válidas. Éstas enmiendas disponen que las edificaciones a construirse serán de tipo residencial unifamiliar, las cuales no podrán variarse por modificación o ampliación para destinarse a apartamentos de alquiler, y que sólo podrán ser alquiladas como una unidad de vivienda. Los recurridos arguyeron que la Asociación está impedida de modificar, enmendar o dejar sin efecto, mediante reglamento, las restricciones impuestas mediante la escritura pública, constitutiva de las servidumbres en equidad originales. Señalaron que esta actuación es contraria a derecho. Tienen razón.

Tal como mencionamos en la parte expositiva del derecho aplicable al caso de autos, este Tribunal ha establecido las formas en que las servidumbres en equidad pueden modificarse o extinguirse.[32] El mero hecho de enmendar un Reglamento de una Asociación de Propietarios, pretendiendo modificar unas servidumbres en equidad para limitar el derecho de propiedad de los residentes, no es una forma válida de alterarlas cuando éstas han sido constituidas por escritura pública y están debidamente inscritas en el Registro de la Propiedad. Existe un derecho propietario reconocido en la Constitución

---

[32] Véase las páginas 15 y 16 de la Sentencia.

de Puerto Rico[33] y la Asociación no puede limitar o restringir el mismo a través de un reglamento.

Además, es un requisito que las servidumbres en equidad se inscriban en el Registro de la Propiedad para que de esta forma puedan ser oponibles a los propietarios presentes y futuros. Su inclusión y posterior alteración en un Reglamento no las convierte en un derecho real oponible *erga omnes*. No obstante, su cancelación en el Registro de la Propiedad requiere expreso consentimiento de todos los titulares de los lotes o solares que habrán de resultar afectados por dicha cancelación.[34] Por lo tanto, las servidumbres en equidad que se hayan constituido de forma válida y conforme a derecho, sólo podrán ser modificadas según las seis (6) formas antes citadas. La Asociación tendrá que actuar conforme a lo aquí expresado. Por lo cual, si la Asociación interesa modificar las servidumbres en equidad, o restringirlas de algún modo, tendrá que ser por convenio de todos los propietarios y mediante escritura pública, inscribible en el Registro de la Propiedad.

IV

Concluimos que actuó correctamente el anterior Tribunal de Circuito Apelaciones al modificar y confirmar la

---

[33] Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 280.

[34] J.R. Vélez Torres, Curso de Derecho Civil: Los Bienes y los Derechos Reales, Offirgraf, S.A., Madrid, 1997 T. II, pág. 417.

determinación del foro primario. Los recurridos no han actuado de forma alguna en contravención a las servidumbres en equidad existentes sobre la Urbanización Mansiones de Playa de Húcares. Confirmamos la sentencia recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la que se une la Jueza Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Rebollo López emitió Opinión de Conformidad.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Propietarios de
Playa Húcares, Inc.

    Demandante-peticionaria

       vs.                         CC-2003-650

Luis Fernando Rodríguez, Jazmín
Saldivar Alejandro y la Sociedad
Legal de Gananciales compuesta
por ambos

    Demandados-recurridos


OPINIÓN DE CONFORMIDAD EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 24 de febrero de 2006


Suscribimos la Sentencia que en el presente caso emite la mayoría de los integrantes del Tribunal. Ello no obstante, hemos entendido procedente expresarnos brevemente, y por separado, en vista de algunos de los argumentos expresados en la Opinión disidente, los cuales entendemos erróneos.

La Opinión disidente señala que "[e]l arrendamiento [que los recurridos pretenden establecer] es una <u>explotación comercial</u> de la propiedad por parte del propietario, en la cual éste cede el uso y disfrute a un tercero a cambio del pago de unos cánones." (Énfasis nuestro). En

esencia, la Minoría se ampara en dicho razonamiento para concluir que la construcción de la unidad de vivienda que realizaron los esposos Rodríguez Saldivar en el sótano de su propiedad, con el propósito de destinarla a alquiler, es contraria al propósito que tuvo el desarrollador al constituir la servidumbre en equidad sobre la Urbanización Mansiones de Playa Húcares. <u>Diferimos</u>.

Al examinar las restricciones de uso impuestas por el desarrollador en el presente caso, mediante la escritura de constitución de servidumbre de la Urbanización, vemos que las mismas son tan claras que huelga el que sean "interpretadas". Según la referida escritura, los solares sólo pueden ser usados con fines residenciales <u>y, ciertamente, existe una prohibición expresa sobre todo uso comercial o para servicios profesionales de los mismos</u>.

Ello no obstante, no es necesario un análisis exhaustivo de dicha prohibición para concluir que cuando el desarrollador prohibió el uso "comercial" de las estructuras se refirió, indudablemente, a establecimientos que se dedican a la venta de productos o servicios.[35] En otras palabras, el desarrollador lo que quiso prohibir fueron negocios, tales como: colmados, farmacias, salones de belleza, restaurantes, tiendas de ropa, de zapatos, centros

---

[35] Comercio, según definido por la vigésima segunda edición del Diccionario de la Real Academia Española (2001), significa tienda, almacén o establecimiento comercial; negociación que se hace comprando y vendiendo o permutando géneros o mercancías; o lugar que, por abundar las tiendas, suele ser grande la concurrencia de gentes.

de cuido de niños, sastrerías, "laundries", talleres de mecánica, centros de cuido de envejecientes, panaderías, gimnasios, etc. En lo que respecta a la prohibición de "servicios profesionales", la restricción se refiere, sin lugar a dudas y a modo de ejemplo, a oficinas de dentistas, doctores, abogados, contables, etc.

En otras palabras, no debe haber la menor duda sobre el hecho de que el alquiler para fines residenciales de alguna de las propiedades en la Urbanización no está contemplado dentro de la restricción comercial que estableció el desarrollador.

Resulta importante enfatizar que la escritura de servidumbre permite, de forma expresa, el alquiler de las propiedades, siendo la única limitación en cuanto a este asunto que el término de alquiler no sea menor de una semana. Por otro lado, y en cuanto a las limitaciones sobre la construcción, la escritura de servidumbre dispone que las construcciones que se realicen deberán cumplir con la reglamentación para un distrito de zonificación R-1 según dispuesta por la Administración de Reglamentos y Permisos, u otras agencias concernidas, así como obtener la aprobación del Comité de Arquitectura de la Asociación. En cuanto al área de construcción dispone que las edificaciones a construirse sólo podrán ser de tipo residencial.

Vemos, entonces, que no debe haber duda en cuanto a que el desarrollador lo que prohibió fue que a los solares se les diera un uso "comercial" o "profesional", tales como los

mencionados anteriormente. Como consecuencia de lo anterior se desprende que el desarrollador lo que pretendió fue que las viviendas fuesen utilizadas para fines residenciales exclusivamente. Por otro lado, resulta importante señalar que <u>no</u> surge que la intención del desarrollador fuese prohibir que hubiera más de una unidad de vivienda por solar.

En consecuencia, <u>no</u> creemos que sea obvio --tal y como parece entenderlo la Minoría-- que "…resulta claro que el desarrollador no contempló, como uso residencial permitido, la construcción de unidades familiares independientes a la residencia principal en los solares del referido proyecto, con el propósito de explotarlas comercialmente mediante alquiler". <u>Tal conclusión no se desprende de la escritura de servidumbre</u>.[36]

Debe mantenerse presente que conforme surge de la decisión que este Tribunal emitiera en <u>Asoc. Vec. Urb. Huyke v. Bco. Santander</u>, res. el 28 de junio de 2002, 2002 T.S.P.R. 97, las servidumbres en equidad deben ser interpretadas <u>restrictivamente</u>; ello por la simple y sencilla razón de que éstas, a su vez, restringen el uso y destino de las propiedad gravadas, lo cual incide sobre el derecho de propiedad. Interpretar tales limitaciones de manera más restrictiva de lo que se pretendió cuando las

---

[36] Distinto, quizás, sería el caso si las referidas restricciones hubieran establecido que las propiedades únicamente fueran unifamiliares.

mismas fueron establecidas, equivale a enmendarlas, imponiendo <u>más limitaciones</u> que las inicialmente pactadas, lo cual es jurídicamente improcedente.

La Minoría, al interpretar la servidumbre de modo que prohíba la construcción realizada en el presente caso, hace una interpretación mucho más restrictiva que la contemplada por el desarrollador. La imposición de condiciones restrictivas al uso y disfrute de las viviendas de la Urbanización Playa Húcares, <u>repetimos</u>, constituye una limitación al derecho de propiedad, <u>derecho que tiene protección constitucional</u>. Por ello, no se trata de ir más allá en búsqueda de lo que el desarrollador no plasmó expresamente en la escritura. En otras palabras, la interpretación de las cláusulas, condiciones y restricciones contempladas en la escritura de servidumbre <u>no</u> puede convertirse en el ejercicio de "inferir" una voluntad que no está expresamente plasmada.

Somos del criterio que, si hubiese sido el verdadero propósito del desarrollador prohibir la construcción de unidades independientes de vivienda dentro de las unidades principales, así lo hubiera hecho expresamente. En <u>ausencia</u> de una prohibición de esta naturaleza tenemos que arribar a la inevitable consecuencia que la construcción de más de una unidad de vivienda por solar <u>no está prohibida por la referida escritura</u>.

De otra parte, los esposos Rodríguez Saldivar contaban con los permisos de A.R.P.E. para hacer la referida

construcción. La razón por la cual no presentaron los planos de construcción ante el Comité de Arquitectura de la Urbanización fue porque el mismo no estaba activo al momento de presentarse los planos en A.R.P.E. y solicitarse los correspondientes permisos. Luego de reactivado, la Asociación tampoco notificó quiénes componían el referido Comité, ni sus direcciones, para fines de la presentación de planos de construcción.

En fin, somos del criterio que el alquiler independiente de la unidad de vivienda construida en el sótano de los Rodríguez Saldivar no constituye una explotación comercial del terreno. Los referidos esposos no pretenden utilizar la misma para vender u ofrecer productos o servicios, que es lo único que está prohibido. En otras palabras, la unidad de vivienda no será utilizada para operar algún negocio u oficina profesional. Además, repetimos, la escritura de servidumbre permite expresamente el alquiler de las viviendas siempre y cuando sea para fines residenciales  y para dichos fines fue que se construyó la unidad de vivienda en cuestión. Por lo cual, el alquiler de dicha unidad no desvirtúa el fin exclusivamente residencial de la Urbanización.


                         FRANCISCO REBOLLO LÓPEZ
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Propietarios de
Playa Húcares, Inc.

    Demandante-Peticionaria

         v.                     CC-2003-650
    Certiorari

Luis Fernando Rodríguez,
Jazmín Saldivar Alejandro y la
Soc. Legal de Gananciales
Compuesta por ambos

    Demandados-Recurridos

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se une la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 24 de febrero de 2006.

Por entender que la Sentencia emitida por la mayoría del Tribunal en el caso de epígrafe es incompatible con la servidumbre en equidad constituida en la Urbanización Mansiones de Playa Húcares y es contraria a la jurisprudencia que hemos establecido desde *Colón v. San Patricio Corporation*, 81 D.P.R. 242 (1959), disentimos.

I

En nuestra jurisdicción, las servidumbres en equidad cumplen el propósito de preservar el valor, la belleza, la comodidad y la seguridad del reparto residencial. *Res. Parkville Sur v. Díaz Luciano*, res. el 28 de abril de 2003, 2003

TSPR 69; *Sands v. Ext. Sagrado Corazón, Inc.*, 103 D.P.R. 826 (1975). Éstas consisten en restricciones y condiciones impuestas por el propietario sobre su terreno con el fin de limitar su uso o explotación para beneficio de presentes y futuros propietarios. *Colón v. San Patricio Corporation*, *supra*.

No debemos olvidar que las servidumbres en equidad son catalogadas como contratos entre las partes pues, por un lado, el desarrollador acuerda gravar su propiedad para delimitar el uso y la construcción, y por el otro, los nuevos adquirientes se someten a dicha voluntad, al comprar la propiedad con conocimiento de este gravamen. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, res. el 28 de junio de 2002, 2002 TSPR 97. En vista de lo anterior, hemos resuelto que estos contratos deben ser interpretados tratando de conocer **cuál fue el verdadero fin que se perseguía al gravar las propiedades** mediante la servidumbre en equidad. *Res. Parkville Sur v. Díaz Luciano*, *supra*; *Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*. Para ello, debemos interpretar las cláusulas del contrato en su totalidad, atribuyendo a las dudosas el sentido que resulte del conjunto de todas. Art. 1237, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3475.

Dicho lo anterior, veamos cuál fue la intención del desarrollador al crear la servidumbre en equidad que nos ocupa.

II

Según se desprende del expediente, la Urbanización Mansiones de Playa Húcares fue concebida por el desarrollador como un proyecto residencial-vacacional en el cual sus propietarios y residentes podrían disfrutar de facilidades de recreo, áreas comunes y acceso a la playa. A su vez, cada propietario debía satisfacer una cuota de mantenimiento para costear, entre otras partidas, los gastos de acceso controlado, vigilancia, mantenimiento y conservación de las facilidades y áreas comunes, y gastos de administración.

Con el fin de propender al desarrollo adecuado de este proyecto, el desarrollador constituyó, mediante escritura pública, ciertas restricciones y limitaciones sobre el terreno. Entre éstas se encuentran las siguientes:

> **Limitaciones sobre la construcción**
> **(a)Aprobación: Toda construcción que se realice en este proyecto en primer lugar deberá cumplir con la reglamentación que para un** distrito de zonificación R-1, **requiere la Administración de Reglamentos y Permisos y las agencias gubernamentales concernidas, así como del comité de Arquitectura de la Asociación de Propietarios de Playa Húcares y obtener sus respectivas aprobaciones.**
> [...]
> **(c)Área de Construcción: Las edificaciones a construirse serán de** tipo residencial **teniendo como área de piso básica de mil quinientos (1,500) pies cuadrados, mínimo.**
> [...]
>
> **Limitaciones de uso**
> **(a)Uso: Los solares del proyecto serán con** fines residenciales exclusivamente. **No se permitirán el uso comercial o para servicios profesionales.**

**[...]**
**(c)Arrendamientos: En caso que algún propietario desee alquilar su propiedad deberá ser con un término no menor de una semana. (Énfasis nuestro.)**

Debemos prestar particular atención a la cláusula (c) de las Limitaciones de uso. Una interpretación correcta de dicho inciso requiere que sea evaluado en conjunto con las demás limitaciones y restricciones adoptadas en la escritura de constitución de servidumbre, y no aisladamente.

Como se puede observar, el desarrollador prohibió enfáticamente el uso comercial de los solares mediante la cláusula (a) de las Limitaciones de uso. El arrendamiento esencialmente es una explotación comercial de la propiedad por parte del propietario, en la cual éste cede el uso y disfrute a un tercero a cambio del pago de unos cánones. No obstante, el desarrollador dispuso una salvedad a la limitación del uso comercial; ésta es, el arrendamiento de la propiedad por un término no menor a una semana. Sin embargo, el desarrollador redactó esta excepción en términos de la propiedad entera, como un todo, sin hacer alusión alguna al arrendamiento independiente de dependencias, niveles, anexos o partes de una residencia. Esto nos mueve a inferir que este último tipo de arrendamiento no fue el contemplado por el desarrollador como el permisible.

Pero nuestro análisis no culmina con lo anterior. El desarrollador, asimismo, dispuso en la escritura de

constitución de servidumbre en equidad unas "Limitaciones sobre la construcción" en las cuales requirió que las estructuras fueran únicamente de tipo residencial, en un espacio mínimo de 1,500 pies cuadraros. Igualmente, impuso que toda construcción debía cumplir con la reglamentación exigida por la Administración de Reglamentos y Permisos y las agencias gubernamentales concernidas para un distrito de zonificación R-1. Cabe destacar que para el año 1990, fecha en que se constituyó esta servidumbre en equidad, la reglamentación sobre zonificación para un Distrito R-1 era provista por la Sec. 7 del Reglamento de Zonificación (Reglamento de Planificación Núm. 4)(Expediente Núm. 3844 de 14 de enero de 1989.) Esta sección disponía en parte:

> 7.05 – Densidad Poblacional en Distritos R-1 – Se permitirá **una casa de una familia en cada solar**, independientemente del tamaño de éste. (Énfasis nuestro.)

Debemos, por tanto, interpretar el verdadero propósito que pretendió el desarrollador con la aludida servidumbre en equidad --en particular, con el inciso (c) de las Limitaciones de uso-- tomando como base el estado de derecho presente al momento de su constitución. Fue en este estado de derecho que el desarrollador descansó para imponer la referida restricción.

A tenor con lo anterior, resulta claro que el desarrollador no contempló, como uso residencial permitido, la construcción de unidades familiares independientes a la residencia principal en los solares

del referido proyecto, con el propósito de explotarlas comercialmente mediante alquiler. Claro está, podemos tomar conocimiento judicial de que los requisitos de construcción para el Distrito R-1 han cambiado sustancialmente desde el año 1990 hasta el año 2001, fecha en que se construyó la unidad familiar a nivel del sótano en el caso de epígrafe.

Sin embargo, no debemos acudir a la reglamentación más reciente sobre la materia --para propósitos de interpretar el inciso (c) de las Limitaciones de uso-- pues produciríamos resultados que el desarrollador nunca conoció ni pretendió. Además, si acudiéramos a la reglamentación reciente, produciríamos resultados inconsistentes con el propósito de la servidumbre, pues no habría uniformidad en la construcción de las viviendas a través del tiempo. Como cuestión de hecho, surge de los anejos del expediente de este caso que el permiso de construcción y de uso expedido por ARPE para la vivienda a nivel del sótano fue uno para un Distrito zonificado R-2.

Por último, debemos incorporar a nuestro análisis la cláusula tercera de la escritura pública, la cual precede las limitaciones y las restricciones a la propiedad. La misma reza:

> TERCERO: Que con el propósito de que dicho proyecto se constituyan [sic] en uno en el cual sus propietarios y residentes puedan disfrutar a plenitud y tener la satisfacción de vivir en un ambiente tranquilo, saludable, de máxima

> seguridad para sus personas y propiedades, donde la belleza del paisaje provoque en los residentes una paz espiritual y un relajamiento de las tensiones del diario vivir, la compareciente por la presente impone sobre el proyecto una serie de restricciones de uso y limitaciones sobre la construcción, encaminados a estos propósitos antes mencionados . . .

Si los propietarios de los 130 solares que comprenden la Urbanización Mansiones de Playa Húcares decidieran construir o ampliar la edificación con el propósito de alquilar unidades dentro de sus residencias, no tendríamos que ser adivinos para anticipar que el futuro de dicho recinto cambiaría totalmente, y dejaría de ser el área residencial tranquila y pacífica que el desarrollador pretendió al constituir la servidumbre que hoy, por fiat judicial, desde este estrado apelativo, enmendamos. Adviértase que el incremento en la densidad poblacional del área, debido al alquiler de propiedades multifamiliares, traería consigo el aumento en el uso de áreas comunes, de facilidades recreativas y del área de la playa, con el consabido aumento en los costos de mantenimiento, limpieza y seguridad en las referidas facilidades del complejo residencial.

En fin, la proliferación de construcciones como las de autos en Mansiones de Playa Húcares produciría un cambio dramático sobre la naturaleza y el uso proyectado por el desarrollador para la urbanización. Además, perjudicaría a los propietarios que, cumpliendo fielmente con las restricciones sobre la propiedad, tendrían que

asumir el aumento en los gastos del uso de las facilidades, producidos por las actuaciones de aquéllos que construyeron unidades adicionales en sus propiedades para arrendarlas a terceros.

Al interpretar la servidumbre en equidad en el caso ante nos, debemos asumir como norte la protección de aquellos propósitos pretendidos inicialmente por el desarrollador como lo son la seguridad, la tranquilidad y la paz de los residentes de Mansiones de Playa Húcares.

En resumen, el inciso (c) de la sección titulada "Limitaciones de uso" tiene que interpretarse como parte de un todo coherente, y no en abstracción de las demás cláusulas de la escritura. Al así hacerlo, sólo podemos concluir que la construcción de una unidad de vivienda familiar a nivel del sótano de la residencial principal, para ser alquilada de forma independiente, viola las restricciones impuestas en dicha urbanización mediante la servidumbre en equidad.

Por todas las razones que preceden, revocaríamos la sentencia emitida por el antiguo Tribunal de Circuito de Apelaciones.

Federico Hernández Denton
Juez Presidente