EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Fernández Martínez, María Bernal Echeandía por sí y en representación de la Sociedad Legal de Gananciales; Asociación Recreativa de Residentes de la Urbanización Santa María, Inc.; UNDARE, Inc.<br><br>    Peticionarios<br><br>         v.<br><br>RAD-MAN San Juan III-D, LLC.; BETA, OMICRON, ZETA<br><br>    Recurrido | Certiorari<br><br>2021 TSPR 149<br><br>208 DPR ____ |

Número del Caso:  CC-2019-928

Fecha: 17 de noviembre de 2021

Tribunal de Apelaciones:

    Panel II

Abogados de la parte peticionaria:

    Lcdo. José A. Molina Cacho
    Lcdo. José A. Cuevas Segarra
    Lcda. Nilda M. Navaro Cabrer

Abogados de la parte recurrida:

    Lcdo. Virgilio Mainardi Peralta
    Lcdo. Luis Manuel García Tous

Materia: Derechos reales: Servidumbres en equidad; condiciones o restricciones que limitan el uso de determinados terrenos y mediante las cuales se imponen cargas o gravámenes que obligan a presentes y futuros adquirentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

José Fernández Martínez,
María Bernal Echeandía
por sí y en representación
de la Sociedad Legal de
Gananciales; Asociación
Recreativa de Residentes de
la Urbanización Santa María,
Inc.; UNDARE, Inc.

    Peticionarios

        v.

RAD-MAN San Juan III-D,
LLC.; BETA, OMICRON, ZETA

    Recurrido

CC-2019-0928    *Certiorari*

Opinión del Tribunal emitida por el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 17 de noviembre de 2021.

En el presente caso, nos corresponde determinar si el Tribunal de Apelaciones erró al revocar cierta *Sentencia Sumaria*, mediante la cual el Tribunal de Primera Instancia emitió un interdicto permanente y ordenó a Rad-Man San Juan III-D, LLC. cesar y desistir de arrendar su propiedad. Ello, luego de que el foro primario concluyera que éste último actuó en contravención de determinadas condiciones restrictivas que gravaban el referido inmueble.

En específico, el recurso ante nuestra consideración nos brinda la oportunidad de expresarnos en cuanto al alcance y vigencia de

ciertas servidumbres en equidad constituidas a favor de la Urbanización Santa María, en el Municipio de San Juan, donde ubica el inmueble del aquí recurrido. Particularmente, debemos auscultar la existencia o no de cambios en el vecindario que justifiquen modificar o extinguir las referidas servidumbres.

Adelantamos que, luego de un ponderado y cuidadoso análisis del expediente ante nuestra consideración, en el caso que nos ocupa no se demostró la ocurrencia de cambios radicales en el área sujeta a las condiciones restrictivas que justifiquen modificar o dejar sin efecto las referidas servidumbres en equidad. Así pues, por no existir hechos materiales en controversia que impidan dictar sentencia sumaria, revocamos el dictamen recurrido. Veamos.

I.

Allá para el 12 de abril de 2018, el señor José Fernández Martínez, la señora María Bernal Echandía y la sociedad legal de bienes gananciales compuesta por ambos; la Asociación Recreativa de Residentes de la Urbanización de Santa María, Inc.; y UNDARE, Inc. (en conjunto, "los demandantes"), incoaron una demanda sobre sentencia declaratoria e interdicto permanente en contra de Rad-Man San Juan III-D (en adelante, "Rad-Man") y Beta, Omicron, Zeta.[1] En la misma, éstos le solicitaron al Tribunal de

---

[1] El matrimonio Fernández-Bernal es propietario de una residencia sita en la Urb. Santa María. Mientras, UNDARE, Inc. es una corporación organizada en el Estado Libre Asociado de Puerto Rico, constituida por residentes de las urbanizaciones Santa María, San Francisco y San

Primera Instancia que ratificara la vigencia y aplicabilidad de ciertas condiciones restrictivas que, a su juicio, gravaban determinada propiedad residencial ubicada en la Urb. Santa María y perteneciente a Rad-Man. A su vez, solicitaron que se le prohibiera a este último continuar con el arrendamiento de apartamentos en su propiedad. A esos fines, incluyeron el estudio de título y la certificación registral del inmueble perteneciente a Rad-Man.

En cuanto a ello, los demandantes alegaron en su demanda que Rad-Man utilizó su propiedad en contravención a las condiciones restrictivas antes mencionadas, ya que la dividió en varios apartamentos de renta a corto plazo, convirtiéndola así en una propiedad comercial y multifamiliar. Asimismo, éstos arguyeron que Rad-Man operaba un comercio de alquiler sin el correspondiente permiso de uso del Municipio de San Juan, en violación al *Reglamento de Ordenación Territorial del Municipio de San Juan*, Ordenanza Núm. 73, Serie 2001-02 de 26 de febrero de 2002.[2]

En específico, surge del expediente ante nuestra consideración que la Urb. Santa María se construyó en solares segregados entre los años 1953 y 1959 provenientes de la finca matriz número 27764, la cual se encontraba

---

Ignacio. Por su parte, los demandados Beta, Omicron y Zeta son nombres ficticios de personas naturales o jurídicas que pudiesen responder.

[2] Por otro lado, también argumentaron que la multiplicidad de familias y arrendatarios que ocupaban la propiedad de Rad-Man ocasionaba hacinamiento, congestión vehicular, acumulación desmedida de basura y pérdida de toda expectativa de tranquilidad que se espera de una comunidad.

gravada en el Registro de la Propiedad por las *Condiciones restrictivas de construcción y uso a favor de la Corporación Reparto Santa María Incorporado*.[3] En lo pertinente a la controversia que nos ocupa, dichas condiciones restrictivas consistían en lo siguiente:

A. All the protective covenants included in the zoning Regulations of the Puerto Rico Planning Board for the District Classified R-1 with the exception of those lots which the proper Puerto Rico Planning Board classifies for commercial purposes in which said lots [w]ill be covered by the protective covenants of the Puerto Rico Planning Board for Commercial lots.

[…]

B. **No lot shall be used except for residential purposes with the exception of those lots which the Puerto Rico Planning Board classified for commercial purposes. No building shall be altered, placed, or permitted to remain on any lot other than <u>one detached single family</u> dwelling not to exceed two and one half stories in height.** (Énfasis suplido). Véase, Apéndice de *certiorari*, pág. 96.

Entre los solares segregados de la referida finca matriz, el 14 de mayo de 1956 surgió la finca número 13958, propiedad de Rad-Man. Según la certificación registral 2018-014918-CERT, la finca número 13958 está gravada por las condiciones restrictivas sobre edificación, constituidas a favor de Reparto Santa María Incorporado, mencionadas en el

---

[3] Originalmente, la finca matriz estaba identificada con el núm. 13461, inscripción primera, Folio 11 del Tomo 532 de Río Piedras Norte, San Juan II, pero, posteriormente, se trasladó a la Sección III de San Juan, bajo el número de finca 27764.

párrafo anterior. Asimismo, ésta se encuentra localizada en una zonificación marcada como Distrito R-1, distrito residencial de baja densidad poblacional. En dicho solar, enclava una casa de concreto identificada con el número 1897 de la Calle Narciso de la Urb. Santa María.[4]

Enterado de la demanda incoada en su contra, Rad-Man presentó su contestación y admitió que dividió su propiedad en varios apartamentos de uso residencial a los fines de arrendarlos. Ahora bien, arguyó que a su propiedad no le aplicaban las condiciones restrictivas que existían a favor de la Urb. Santa María, debido a que, a su juicio, habían ocurrido cambios radicales en el vecindario -- incluyendo la operación de varios comercios -- que tornaron inoperante la servidumbre en equidad. De igual forma, Rad-Man sostuvo que su propiedad se encontraba localizada fuera del control de acceso de la urbanización, lo cual incidía en la aplicación de las condiciones restrictivas y, en la alternativa, que estaba en trámites para obtener de la Oficina de Gerencia y Permisos (en adelante, "OGPe") los permisos correspondientes con el fin de poder operar conforme a la excepción dispuesta en las condiciones restrictivas.[5]

---

[4] La finca número 13958 y la propiedad estructural fue adquirida por Rad-Man el 30 de junio de 2015, mediante la escritura pública número 83, otorgada ante el notario Omar Baruch Santiago Ramos.

[5] Posteriormente, la demanda fue enmendada a los fines de corregir algunas de las alegaciones allí contenidas. De igual forma, Rad-Man presentó su contestación a la demanda enmendada. Véase, Apéndice de *certiorari*, págs. 31-52 y 53-59.

Tras varios trámites procesales no necesarios aquí pormenorizar, el 27 de septiembre de 2018 los demandantes presentaron una *Moción de sentencia sumaria* mediante la cual solicitaron al Tribunal de Primera Instancia que resolviera que la propiedad de Rad-Man estaba sujeta a las condiciones restrictivas que impedían el uso comercial y multifamiliar de la misma. Lo anterior, por entender que no existía controversia en cuanto a que la propiedad de Rad-Man ubicaba en una zonificación catalogada como Distrito R-1 y que dicho inmueble estaba gravado por unas condiciones restrictivas que limitaban su uso a una sola residencia.[6]

En consecuencia, éstos expresaron que solo restaba dirimir dos controversias de derecho, a saber: 1) determinar si las condiciones restrictivas que se alegaron en la demanda aplicaban a la propiedad de Rad-Man y si dicha corporación podía, conforme a derecho, subdividir el inmueble en apartamentos para colocarlos en el mercado de alquiler; y 2) la procedencia de poner en vigor, mediante interdicto permanente, una condición restrictiva debidamente inscrita en el Registro de la Propiedad. Por último, arguyeron que la propiedad de Rad-Man era la única

---

[6] Junto a su *Moción de sentencia sumaria*, los demandantes incluyeron una serie de documentos, a saber: (a) varias declaraciones juradas; (b) ciertas cartas expedidas por la Oficina de Permisos del Municipio de San Juan; (c) mapa de calificación de suelo; (d) certificación registral perteneciente a la finca de Rad-Man y un estudio de título de la misma; (e) certificación registral de la finca matriz de la cual surgió la finca de Rad-Man; y (f) copia del Reglamento de Ordenación Territorial del Municipio de San Juan.

en el vecindario que había sido dividida en múltiples apartamentos con el fin de arrendarlos.

Por su parte, Rad-Man presentó su *Oposición a la moción de sentencia sumaria*, mediante la cual nuevamente admitió haber dividido su inmueble en seis (6) apartamentos destinados para alquiler a largo plazo. De otra parte, reiteró que ocurrió un cambio de circunstancias en el uso de las propiedades del vecindario que justificaban atemperar las servidumbres y que estas últimas proveían para la obtención de permisos a modo de excepción. Así, esbozó como hechos en controversia los siguientes: 1) si las condiciones restrictivas impuestas por la servidumbre en equidad fueron abandonadas, renunciadas o modificadas a tal grado que quedaron inoperantes; 2) de estar vigentes, si afectaban a las propiedades localizadas fuera del control de acceso y perímetro de la Urbanización; 3) si su inmueble se encontraba fuera del control de acceso y perímetro de la Urbanización; y 4) si el remedio solicitado involucraba una controversia real o justiciable, por cuanto la servidumbre proveía como excepción la obtención de permisos y los mismos se encontraban ante la consideración de la OGPe.

De igual forma, Rad-Man alegó que los demandantes no probaron con evidencia fehaciente que no ocurrieron cambios radicales en el vecindario, así como que ellos han tolerado o ignorado la existencia de violaciones a las condiciones restrictivas por parte de otros propietarios; en particular,

aquellas propiedades que tienen más de los dos niveles y medio de altura exigidos por las condiciones restrictivas. Por último, sostuvo que las necesidades y uso de aquellas propiedades que con el tiempo se quedaron fuera del control de acceso, como la suya, cambiaron de uso residencial a uno con fines comerciales, independientemente de que la clasificación del distrito territorial fuese R-1.

Luego de un sinnúmero de réplicas y dúplicas, el 15 de marzo de 2019 el Tribunal de Primera Instancia realizó una inspección ocular en la Urb. Santa María y la periferia de ésta, con la presencia de todas las partes en el litigio. En ella, el foro primario observó la finca perteneciente a Rad-Man, así como las propiedades circundantes a la misma, el interior de las urbanizaciones que componen UNDARE y las fincas que según Rad-Man estaban destinadas a uso comercial.

Evaluados los planteamientos de las partes, junto a lo observado durante la inspección ocular, el Tribunal de Primera Instancia dictó *Sentencia* en la cual declaró *ha lugar* la *Moción de sentencia sumaria* presentada por los demandantes y emitió el interdicto solicitado por éstos. Consecuentemente, ordenó a Rad-Man cesar y desistir de arrendar su propiedad.

Para ello, dicho foro formuló cuarenta y seis (46) determinaciones de hechos,[7] en virtud de las cuales sostuvo

---

[7] En lo pertinente al presente caso, el Tribunal de Primera Instancia determinó que no estaban en controversia los siguientes hechos:

   ...

lo siguiente: 1) el área sujeta a las condiciones restrictivas es extensa, compuesta de decenas de casas cuyos

---

7) La propiedad de Rad-Man está dividida en 5 apartamentos para alquiler tipo residencial.

8) La propiedad de Rad-Man está localizada en una zonificación marcada como Distrito R-1, distrito residencial de baja densidad poblacional.

10) La finca 13958 [perteneciente a Rad-Man] está marcada como el solar 31-S de Reparto Santa María del barrio Monacillo de Río Piedras y enclava una casa de concreto, destinada para vivienda.

11) La finca 13958 tiene como Condiciones Restrictivas aquellas sobre edificación a favor de Reparto Santa María Incorporado, según la inscripción 1.

17) El 5 de septiembre de 2018, la Oficina de Permisos del Municipio Autónomo de San Juan, mediante su Oficial de Permisos, 1 Arq. Juan C. Gallisá Becerra, emitió una comunicación en la que ordenó el archivo de la solicitud de Rad-Man, 180P-4797-AA-MU, para obtener el permiso de una casa de apartamentos por tratarse de una variación de uso a la clasificación R-1, distrito de baja densidad poblacional.

18) La comunicación de la Oficina de Permisos del Municipio Autónomo de San Juan refirió al solicitante a OGPe, a tenor con la comunicación del 28 de marzo de 2016 de la Junta de Planificación, en la que se ordenó que las solicitudes de variación en uso se eleven ante dicho ente administrativo.

20) El proyecto descrito ... denominado "Ampliaciones Narciso 1897", describe una casa de apartamentos de tipo residencial, con 2 apartamentos de 1 dormitorio, 2 apartamentos de 2 dormitorios y apartamento de 3 dormitorios, distribuidos en 3 plantas, con 5 estacionamientos para residentes.

23) La propiedad de Rad-Man está localizada en la calle Sauco, esquina Calle Narciso, colindantes con un parque recreativo de la Urbanización Santa María.

29) La propiedad de Rad-Man tiene una entrada por la calle Sauco y dos entradas por la calle Narciso que están dentro del control de acceso de la Urb. Santa María.

40) La Avenida de Diego cruza entre dos hileras de fincas de la Urbanización San Francisco que están fuera del control de acceso de UNDARE.

42) Las fincas de la Avenida de Diego que colindan directamente con la parte de UNDARE que tiene control de acceso están destinadas a uso residencial.

43) Varias de las fincas que ubican en la hilera de la Avenida de Diego opuesta a los controles de acceso de UNDARE están destinadas a uso comercial.

45) En el área de UNDARE sujeta a controles de acceso no se identificó ninguna propiedad comercial.

46) Dentro del control de acceso de UNDARE solo se observaron tres (3) casas de (3) tres niveles, entre decenas de propiedades. Véase, Apéndice de *certiorari*, págs. 344-350.

propietarios conforman UNDARE; 2) en cuanto a las fincas de esta última, las mismas están unidas por sus calles internas y el acceso a ellas está restringido por portones a vuelta redonda, colindando así con vías públicas como la Avenida de Diego, la carretera PR-177, la carretera PR-1 y la Calle Glasgow; 3) algunas casas sujetas a las condiciones restrictivas quedaron fuera de sus portones de control de acceso y expuestas a dichas vías públicas; 4) los locales comerciales que alegó Rad-Man que estaban incumpliendo con la restricción de uso residencial se encuentran fuera del control de acceso y en las calles periferales, entiéndase que las fincas comerciales sujetas a las condiciones restrictivas de UNDARE tienen sus entradas hacia las vías públicas antes mencionadas y con acceso directo y sin barrera desde la misma.

Del mismo modo, y en lo relacionado al tráfico vehicular del área, el Tribunal de Primera Instancia observó lo siguiente: 1) las fincas periferales están expuestas al desarrollo urbano acontecido en la zona y al gran flujo de carros por las vías públicas que colindan con sus entradas, toda vez que existen otros comercios en terrenos aledaños que no están sujetos a las condiciones restrictivas; 2) el tráfico vehicular en las calles internas de UNDARE es moderado en comparación a las fincas periferales; 3) en la calle Sauco -- una de las entradas donde ubica la propiedad de Rad-Man -- no hay acceso controlado, pero el tráfico

vehicular es mayormente para llegar al parque, al Colegio San Ignacio y a la Calle Narciso; y 4) por las calles sujetas al control de acceso, transitan los vehículos que autorizan los residentes. A tenor con estas últimas dos observaciones, el foro primario entendió que la propiedad de Rad-Man estaba sujeta a un tránsito local. Es decir, que, aun cuando el referido inmueble no estaba dentro del control de acceso, por sus entradas no transitaba el flujo vehicular constante y de paso que había en las vías públicas que colindan con las fincas periferales.

**De otra parte, dicho foro también indicó en su** *Sentencia* **que las fincas internas de UNDARE mantenían su uso residencial y unifamiliar, pues no se observaron fincas multifamiliares ni comercio alguno.** Además, incluso cuando observó dos (2) escuelas y una (1) iglesia frente a la propiedad de Rad-Man, las mismas eran variaciones de usos previstos y permitidos para las zonas R-1. Razonó que el anterior uso no contravino las condiciones restrictivas, pues éstas últimas permitían variaciones avaladas por la Junta de Planificación.

En cuanto a las alegaciones de Rad-Man sobre el incumplimiento de algunas propiedades con la altura requerida por la servidumbre en equidad, el Tribunal de Primera Instancia constató que solo se trataba de tres (3) casas que tenían tres (3) niveles, en lugar del máximo de dos y medio (2.5). Sin embargo, observó también que las

fachadas y las alturas de las propiedades de UNDARE eran tan variadas que no se podía concluir que la alteración en la altura de tres (3) casas, que supera la restricción por medio nivel, fuese un cambio radical que ameritara dejar sin efecto las condiciones restrictivas.

Por último, el referido foro dispuso que, de la evidencia relacionada al permiso de variación solicitado a la OGPe, no podía concluir que ello equivalía a una solicitud de permiso para un local comercial. Por consiguiente, entendió que Rad-Man no estaba autorizado a operar un local de esta naturaleza, por lo que no se cumplía con la excepción dispuesta en las condiciones restrictivas. Véase, Sentencia del Tribunal de Primera Instancia, págs. 21-25.

A la luz de lo anterior, el foro primario concluyó que Rad-Man no demostró la ocurrencia de cambios radicales que hubiesen tornado la servidumbre en equidad en inoperante. Así pues, sentenció que los cambios ocurridos fueron en la periferia, mientras en el interior de UNDARE se mantuvo el uso residencial y unifamiliar de las fincas a tenor con la servidumbre en equidad, de manera que su valor y beneficio para los predios dominantes aún subsistía y que las condiciones restrictivas todavía cumplían con el propósito para el cual se establecieron. En consecuencia, resolvió que Rad-Man violó las condiciones restrictivas al convertir su propiedad en una multifamiliar.

Insatisfecho con el referido dictamen, Rad-Man acudió al Tribunal de Apelaciones mediante recurso de apelación, en el cual alegó que el foro primario erró al disponer del caso sumariamente a pesar de subsistir ciertas controversias de hechos. Asimismo, señaló que dicho foro erró al determinar sumariamente que la propiedad de Rad-Man no se encontraba en la periferia de la urbanización, al declarar la inexistencia de cambios radicales en el área, y al sostener que era inmaterial el hecho de que la propiedad se encontraba fuera del control de acceso.

Tras analizar los alegatos de ambas partes, el 1 de noviembre de 2019 el foro apelativo intermedio emitió una *Sentencia*, mediante la cual revocó al Tribunal de Primera Instancia, por entender que subsistían hechos esenciales que debían ser resueltos en un juicio plenario. En vista de ello, y aun cuando acogió los cuarenta y seis (46) hechos incontrovertidos esbozados por el foro primario, el tribunal *a quo* enumeró trece (13) hechos que, a su juicio, eran materiales y estaban en controversia.[8] De esta forma, y tras

---

[8] El Tribunal de Apelaciones determinó que estaban en controversia los siguientes hechos:

    (1) Si las condiciones restrictivas impuestas por la servidumbre en equidad fueron abandonadas y/o renunciadas y/o modificadas a tal grado, que se tornaron están [sic] inoperantes e inservibles.

    (2) Si en efecto, los cambios radicales en el vecindario de la Urb. Santa María ameritan descartar las condiciones restrictivas impuestas por la servidumbre en equidad.

    (3) Si las condiciones restrictivas impuestas por la servidumbre en equidad, de estar vigentes, afectan a las propiedades que se encuentran fuera del control de acceso y perímetro de la Urb. Santa María.

razonar que la prueba documental presentada no era suficiente para adjudicar la causa de acción a través del mecanismo de sentencia sumaria, concluyó que el Tribunal de Primera Instancia abusó de su discreción y, consecuentemente, ordenó la continuación de los procedimientos mediante un juicio en su fondo.

---

(4) Si la propiedad del apelante se encuentra fuera del control de acceso y perímetro de la Urb. Santa María y si le es de aplicación las condiciones restrictivas que afectan a las propiedades sitas dentro del [sic] dicho control de acceso y perímetro de las Urbs. Santa María, San Francisco y San Ignacio.

(5) Si la servidumbre en equidad provee, como excepción, la obtención de los permisos.

(6) Si las condiciones restrictivas proveen para el uso al cual el apelante destina el inmueble.

(7) Si el uso propuesto al inmueble del apelante (arrendamiento a largo plazo o casa de apartamentos) está reñido con las condiciones restrictivas impuestas por la servidumbre en equidad.

(8) Si las necesidades de los residentes de las viviendas que ubican dentro del control de acceso son diferentes a aquellas de los [que] residen fuera de dicho control.

(9) Si las necesidades y uso de las propiedades fuera del control de acceso cambiaron, a pesar de tener la clasificación R-1.

(10) Si en efecto, de la inspección ocular se identificaron propiedades fuera del perímetro del control de acceso que hayan sufrido cambios de uso residencial a uso comercial, aun cuando mantienen la clasificación R-1 y R-2. Además, si surge que la propiedad del apelante queda circundante de propiedades que han sido destinados a uso comercial.

(11) Si el uso para el cual el apelante ha destinado su propiedad es para uno de hospedería u hostelero o si está destinada para alquiler a largo plazo.

(12) Si el apelante ha sido discriminado por hacer valer en su propiedad, las condiciones restricciones [sic], a pesar de que ésta ubica fuera del control y en la periferia de la Urb. Santa María, mientras los apelados ignoran a otras propiedades que operan comercios con una zonificación R-1 y R-2 o violan la altura permitida por la servidumbre o mantienen estructuras no permanentes.

(13) Si por décadas, los residentes de las urbanizaciones de UNDARE han tolerado los cambios que han modificado las condiciones restricciones [sic] de dicho vecindario.

En desacuerdo con lo dictaminado por el Tribunal de Apelaciones, los demandantes acuden ante nos. En su recurso de *certiorari*, éstos aducen que dicho foro erró al revocar la *Sentencia* del Tribunal de Primera Instancia a pesar de haber acogido todas las determinaciones de hechos incontrovertidos esbozadas por el foro primario. **Lo anterior, pues, a su entender, el foro apelativo intermedio utilizó como fundamento presuntas controversias de hechos que en realidad son controversias de derecho.** Además, sostienen que el tribunal *a quo* incidió al tomar en consideración hechos inmateriales, algunos de los cuales no están en controversia.

Trabada así la controversia, expedimos el recurso, y con el beneficio de la comparecencia de ambas partes, procedemos a discutir el derecho aplicable.

II.

A.

Como es sabido, las servidumbres en equidad, -- figura jurídica que adoptamos del *common law* --, son aquellas condiciones o restricciones que limitan el uso de determinados terrenos y mediante las cuales se imponen cargas o gravámenes que obligan a presentes y futuros adquirentes. *Park Tower, S.E. v. Registradora*, 194 DPR 244, 252, (2015); *Residentes Parville* v. *Díaz*, 159 DPR 374, 382-83 (2003); *Asoc. Vec. Urb Hyuke v. Bco. Santander*, 157 DPR 521, 534 (2002). Véase, M. J. Godreau y A. I. García,

*Servidumbres y Conservación*, 67 Rᴇᴠ. Jᴜʀ. UPR 249, 302 (1998). Conocidas también como condiciones restrictivas, éstas limitan las facultades de un propietario de una finca sujeta a dichos gravámenes en cuanto a la edificación de obras nuevas, los cambios que pueda realizar a las obras ya hechas y los usos a los que puede destinar el inmueble. *Asoc. Playa Húcares v. Rodríguez*, 167 DPR 255, 263 (2006) (sentencia); *Residentes Parville v. Díaz*, *supra*, pág. 384; *Sands v. Ext. Sagrado Corazón, Inc.*, 103 DPR 826, 827 (1975). Pertinente al caso ante nos, valga señalar que las servidumbres son indivisibles, por lo que, "[c]uando una finca gravada con servidumbres en equidad es segregada, esta nueva finca también está gravada con las servidumbres en equidad". M. E. García Cárdenas, *Derecho de urbanizaciones: servidumbre en equidad, controles de acceso e instalaciones vecinales*, San Juan, Ed. Interjuris, 2010, pág. 48.

En cuanto a su propósito, las condiciones restrictivas son constituidas unilateralmente por el urbanizador como parte de un plan general para el desarrollo y la preservación de una urbanización, con el fin de preservar la configuración arquitectónica o urbanística de dicho proyecto al igual que la belleza, comodidad y seguridad del reparto residencial. *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, 203 DPR 31, 42 (2019); *Asoc. Playa Húcares v. Rodríguez*, *supra*, págs. 262-63; *Rodríguez et al. v. Gómez et al.*, 156 DPR 307, 312 (2002). Dicha  limitación al

derecho de propiedad constituye entre los predios afectados "una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización". J. R. Vélez Torres, *Curso de Derecho Civil*, San Juan, 1995, T. II, pág. 417. Véase, además, *Residentes Parkville v. Díaz, supra*, pág. 385; *Rodríguez et al. v. Gómez et al., supra*, pág. 312.

Para su validez y eficacia, la jurisprudencia ha delineado una serie de requisitos, a saber: 1) las limitaciones deberán ser razonables; 2) estas últimas deben establecerse como parte de un plan general de mejoras; 3) que consten de forma específica en el título de la propiedad; y 4) que sean inscritas en el Registro de la Propiedad. *Park Tower, S.E. v. Registradora, supra*, pág. 353; *SLG Pérez Rivera v. Registradora*, 189 DPR 729, 736 (2013); *Carrillo Norat v. Camejo*, 107 DPR 132, 137 (1978); *Colón v. San Patricio Corporation*, 81 DPR 242, 254 (1959). Una vez inscritas, las servidumbres en equidad constituyen derechos reales oponibles *erga omnes*. *Asoc. Vec. Urb Hyuke v. Bco. Santander, supra*, pág. 535; *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 353 (1986). Esto significa que, el conocimiento de las limitaciones y condiciones impuestas en virtud de las mismas se imputa a todo presente y futuro adquirente de la propiedad que éstas gravan. *Asoc. Vec. Urb Hyuke v. Bco. Santander, supra*, págs. 535-36; *SLG*

*Pérez Rivera v. Registradora*, *supra*, págs. 736-37. Así, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones". *Asoc. Vec. Urb Hyuke v. Bco. Santander*, *supra*, pág. 536. Véase, también, *Rodríguez et al. v. Gómez et al.*, *supra*.

En esa dirección, las servidumbres en equidad son consideradas como un contrato de naturaleza real, ya sea porque las partes acuerdan gravar su propiedad para limitar su uso o porque -- a sabiendas de las restricciones inscritas en el Registro de la Propiedad -- adquieren la propiedad gravada, aceptando así someterse a éstas. *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, *supra*, pág. 43; *Asoc. Playa Húcares v. Rodríguez*, *supra*, pág. 264; *Residentes Parkville v. Díaz*, *supra*, pág. 384. Para hacer efectivos sus derechos e impedir violaciones a las limitaciones impuestas, los dueños de predios sujetos a servidumbres en equidad tienen disponible el recurso de *injunction*.[9] *Rodríguez et al. v. Gómez et al.*, *supra*; *Asoc.*

_____

[9] Contra dicho recurso, la parte demandada puede oponer todas las defensas que le otorgan los principios en equidad, a saber: 1) consentimiento, defensa que procede invocarla cuando el demandante ha permitido que otras personas violen las restricciones, siempre que esas violaciones sean de carácter sustancial y permanente (*acquiescence*); 2) consciencia impura, la cual procede cuando el demandante que pretende poner en vigor una condición ha violado la misma de forma reiterada (*unclean hands*); 3) incuria, aplica cuando el demandante incurre en falta de diligencia y tardíamente pretende poner en vigor la restricción en un momento en que la parte demandada ya ha actuado de forma tal que resultaría inútil y hasta opresivo para ésta hacerla cumplir con la condición (*laches*); y 4) impedimento, cuando el demandante -- al instar el recurso -- actúa en una forma que resulta ser incompatible con sus

*V. Villa Caparra v. Iglesia Católica*, *supra*, págs. 353-54;
Vélez Torres, *op. cit.*, pág. 419. Una vez reconocida la
validez y vigencia de las condiciones restrictivas, los
tribunales estamos llamados a hacer cumplir a cabalidad los
propósitos del contrato y, de esta forma, preservar la
autonomía de la voluntad de las partes. *Asoc. Playa Húcares
v. Rodríguez*, *supra*, pág. 264; *Residentes Parkville v. Díaz*,
*supra*, pág. 385.

B.

Establecido lo anterior, y por tratarse de una figura
jurídica que se rige por los principios de equidad del *common
law*, las servidumbres en equidad pueden modificarse o
extinguirse en varios escenarios, a saber: 1) por convenio
de los interesados, ya sea mediante rescisión total o
parcial de las cláusulas restrictivas o mediante la
constitución de nuevas restricciones que alteren las
anteriores; 2) por efecto del tiempo o por realizarse la
condición, si las restricciones se han constituido a término
o de modo condicional; 3) por reunirse en una misma persona
la propiedad de todos los predios sirvientes y dominantes
(confusión); 4) por expropiación forzosa del predio
sirviente si los gravámenes en equidad son incompatibles con
el uso público del inmueble expropiado; **5) por renuncia o
abandono de los propietarios que reciben los beneficios de**

---

actos y conductas anteriores (*estoppel*). Véase, Vélez Torres, *op. cit.*,
pág. 418.

**la servidumbre, mediante conducta que demuestre una intención concluyente de renunciar o abandonar los mismos; y 6) cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta imposible alcanzar los fines que perseguía la servidumbre.**[10] *Dorado del Mar Estates Homeowner Association, Inc. v. Weber*, *supra*, pág. 44; *Colón v. San Patricio Corporation*, *supra*, págs. 261-262. Véase, *García Cárdenas, op. cit.*, págs. 46-55. Son estas últimas (2) dos excepciones las que nos compete evaluar en el caso de autos.

En lo relacionado a la causal de abandono, la profesora Margarita E. García Cárdenas, en su obra *Derecho de urbanizaciones: servidumbre en equidad, controles de acceso e instalaciones vecinales*, *op. cit.*, nos dice que la misma requiere una conducta que demuestre una intención concluyente de renunciar o abandonar las condiciones restrictivas. *García Cárdenas, op. cit.*, pág. 55. "Se trata de una actitud de dejadez ante el incumplimiento de otros

---

[10] Resulta conveniente señalar que, el peso de la prueba para establecer que ha ocurrido un cambio en el vecindario, le corresponde al que ataca la validez de la servidumbre en equidad. *Asoc. Vec. Urb Hyuke v. Bco. Santander*, *supra*, pág. 542. Así se ha dicho que:

El peso que tiene el demandado es tan grande como si el cambio hubiese afectado el área entera sujeta a la servidumbre en equidad. La razón para esto es que solo de esta forma es posible defender y preservar el valor de los lotes residenciales internos aún no afectados. F. Arraíza Navas y J. R. Roque Velázquez, *Las servidumbres en equidad, las defensas en equidad y el Registro de la Propiedad en el Derecho puertorriqueño*, 32 REV. JUR. UIPR 35, 44 (1997).

titulares". *Íd*. Dicha causal de extinción o modificación está íntimamente ligada a la sexta causal, cambios radicales en el vecindario. *Íd*.

En esa dirección, para que los cambios del vecindario puedan provocar la modificación o extinción de una servidumbre en equidad, nuestro ordenamiento jurídico exige que los mismos sean de carácter radical y permanente, de forma tal que impidan sustancialmente la consecución de las ventajas y beneficios establecidos a favor de los predios dominantes. *Asoc. Vec. Urb. Hyuke v. Bco. Santander*, *supra*, pág. 542; *Colón v. San Patricio Corporation*, *supra*, págs. 264-65. Dicho de otro modo, "[s]i por razón de cambios radicales y permanentes en las condiciones de un vecindario, resulta prácticamente imposible realizar o lograr los fines que perseguía la servidumbre en equidad, entonces ésta queda modificada o extinguida". *BPPR v. Sucn. Talavera*, 174 DPR 686, 710 (2008); *Colón v. San Patricio Corporation*, *supra*.

Adviértase que, para que dicha excepción proceda, la doctrina ha establecido tres (3) requisitos con los que se debe cumplir. En primer lugar, dichos cambios deben convertir la restricción en una carga irrazonable y opresiva para el dueño del predio sirviente. *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*, pág. 355; *Colón v. San Patricio Corporation*, *supra*, pág. 265. Segundo, los mismos deben ser de tal naturaleza que destruyan el valor que de otro modo tendría la restricción para los dueños de los predios

dominantes. *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*; *Colón v. San Patricio Corporation*, *supra*. Por último, estos cambios han de frustrar por completo y permanentemente el propósito para el cual se establecieron las condiciones restrictivas. *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*; *Colón v. San Patricio Corporation*, *supra*.

Sobre el particular, en el normativo caso *Colón v. San Patricio Corporation*, *supra*, este Tribunal indicó que, conjuntamente con el cumplimiento de los requisitos anteriores, se requiere que los cambios del vecindario afecten -- en las formas antes señaladas -- a la totalidad de los solares comprendidos dentro del área restringida. *Íd*. en la pág. 265. En el precitado caso, establecimos que:

> **No basta que una parte de dicha área, situada al borde o a orillas del distrito que no está sujeto a las restricciones, sufra el impacto de los referidos cambios, si hay solares o porciones interiores del área restringida que todavía pueden recibir las ventajas y beneficios establecidos a su favor mediante la servidumbre en equidad.** (Énfasis suplido). *Íd.*

Así pues, "[p]ara extinguir las servidumbres por cambio radical en el vecindario, éste tendría que darse en las fincas gravadas por las restricciones y, además, de forma indubitada y abrumadora". *García Cárdenas*, *op. cit.*, pág. 51. Por lo tanto, las restricciones no pueden extinguirse mediante un proceso gradual de abrogación que empieza con los solares al borde del área restringida y se extiende paso a paso hasta las porciones o solares situados en el centro de los terrenos restringidos. *Asoc. Vec. Urb Hyuke v. Bco.*

*Santander*, *supra*, pág. 543; *Colón v. San Patricio Corporation*, *supra*, pág. 265.

Cónsono con lo anterior, hemos advertido que los cambios en los terrenos o predios sujetos a las condiciones restrictivas tienen más peso que aquellos ocurridos fuera o en los que los rodean. *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*, págs. 355-56. Por consiguiente, "[s]i el área gravada no se ha deteriorado, de ordinario no debemos dejar sin efecto una restricción porque han ocurrido cambios en la periferia". *Asoc. Vec. Urb Hyuke v. Bco. Santander*, *supra*, pág. 543; *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*. Véase, también, *Colón v San Patricio Corporation*, *supra*, págs. 265-66. Tampoco es suficiente un cambio en las condiciones económicas del área circundante, que afecte el valor en el mercado de aquellas propiedades que quedaron fuera del control de acceso o que colindan con las fincas periferales. *Colón v. San Patricio Corporation*, *supra*, pág. 265. Véanse, Arraiza Navas y Roqué Velázquez, *supra*, pág. 44; García Cárdenas, *op. cit.*, pág. 51. "Es obvio [pues] que para eliminar las servidumbres en equidad por motivos de cambios radicales no basta probar los acaecidos en el vecindario colindante o periferales. El cambio radical tiene que haber ocurrido en las propiedades afectadas por las restricciones y, además, en una mayoría significativa de ellos". García Cárdenas, *op. cit.*, pág. 52.

Particularmente, en *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*, nos correspondía determinar si la Iglesia Católica podía construir una cancha auditorio para la celebración de ciertas actividades de la Academia San José, en contravención de las condiciones restrictivas que gravaban los solares a utilizarse. Para ello, debíamos evaluar si ciertos cambios acaecidos en la zona habían extinguido o modificado dichas condiciones. En lo pertinente al presente caso, y tras responder dichas interrogantes en la negativa, esta Curia sentenció que:

> **Si el área gravada no se ha deteriorado, de ordinario no debemos dejar sin efecto una restricción porque han ocurrido cambios en la periferia. De hecho, es lógico que los cambios ocurran precisamente en la periferia.** Las servidumbres en equidad protegen e impiden que se transforme el vecindario [pues] si como consecuencia de variaciones en las condiciones del área restringida a un lote o área se le permitiese liberarse de la cubierta protectora de restricciones residenciales únicamente, el dueño del lote colindante tendría entonces una acción igual ... ante el Tribunal, y llegado el momento, todos los demás lotes ... burlarían y anularían la restricción, y destruirían el carácter esencialmente residencial del área total. (Énfasis suplido). *Íd*. en la pág. 356.

Ahora bien, el análisis precedente no se da en el vacío. Por el contrario, se han establecido varios factores que se tomarán en consideración para determinar si los cambios acaecidos tuvieron efecto o no sobre la servidumbre en equidad de la cual se trate. A tono con lo anterior, hemos reconocido los siguientes factores: 1) el tamaño del área sujeta a las restricciones; 2) la localización de los

cambios ocurridos con respecto al área restringida; 3) el tipo de cambio ocurrido; 4) cambios en la infraestructura, con particular referencia a los patrones de tránsito; 5) la extensión y naturaleza de los usos comerciales e industriales en las áreas circundantes; 6) valor de los terrenos residenciales en comparación con los comerciales; 7) término y duración de las restricciones; 8) si las restricciones continúan siendo beneficiosas o no para los dueños de los solares afectados; y 9) el cambio ocurrido en la zonificación del área y sus alrededores. *Asoc. Vec. Urb Hyuke v. Bco. Santander*, *supra*, págs. 543-44; Godreau Robles y García Saúl, *supra*, págs. 304-305.

En cuanto al primero de los requisitos, precisa señalar que "[u]n área pequeña es más vulnerable y sus solares están más expuestos a los embates de los cambios en la periferia que lo que ocurre en un sector más grande". *Asoc. V. Villa Caparra v. Iglesia Católica, supra,* pág. 356; *Asoc. Vec. Urb Hyuke v. Bco. Santander*, *supra*, pág. 544. Por su parte, en lo relacionado al segundo requisito -- entiéndase, la localización de los cambios ocurridos -- mientras más cerca del área restringida sean los cambios, mayor el impacto sobre los solares afectados. *Asoc. V. Villa Caparra* v. *Iglesia Católica*, *supra*, págs. 356-57. Véase, Godreau y A. I. García, *supra*, pág. 305.

Asimismo, si bien este Tribunal ha reiterado que "[p]or la mera aprobación gubernamental de un proyecto no quedan

erradicadas las servidumbres en equidad, también alude a que los foros judiciales han de sopesar las restricciones, a la luz del desarrollo aprobado". García Cárdenas, *op. cit.*, pág. 59. Es decir, los reglamentos de zonificación y su instrumentación no son determinantes pero pueden ser considerados para evaluar, junto a los demás factores, si han ocurrido cambios radicales en el vecindario. *Íd. Asoc. V. Villa Caparra* v. *Iglesia Católica*, *supra*, págs. 357-58. Esto, ya que en nuestro ordenamiento jurídico no existe ley o reglamento que le conceda autoridad a las agencias administrativas para adjudicar los derechos de las partes que surgen de restricciones privadas. *Residentes Parkville* v. *Díaz*, *supra*, pág. 392; *Luan Investment Corp. v. Román*, 125 DPR 533, 551 (1990); *Pérez v. Pagán*, 79 DPR 195, 198 (1956). "De modo que una servidumbre en equidad retiene toda su vigencia, a pesar de que una agencia administrativa conceda un permiso de uso contrario a dicho gravamen". *Residentes Parkville v. Díaz, supra*, pág. 392. Véanse, además, *Sabater v. Corp. Des. Eco. Del Pastillo, Inc.*, 140 DPR 497, 508 (1996); *Rodríguez v. Twin Towers Corp.*, 102 DPR 355, 356 (1974).

### III.

De otra parte, y por ser en extremo pertinente para la correcta disposición de la controversia que nos ocupa, es menester reseñar lo dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, la cual regula

todo lo concerniente a la moción de sentencia sumaria; mecanismo procesal que se utiliza en aquellos litigios que no presenten controversias genuinas de hechos materiales y que, por consiguiente, no ameriten la celebración de un juicio en su fondo. Esto, ya que lo único que ello requiere es dirimir una controversia de derecho. *Mejías Montalvo v. Carrasquillo Martínez*, 185 DPR 288, 299 (2012); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Vera Morales v. Dr. Bravo Colón*, 161 DPR 308, 331-32 (2004). Así, el propósito principal del mecanismo de sentencia sumaria es la solución justa, rápida y económica de los litigios civiles. *Zapata Berríos v. J.F. Montalvo Cash & Carry Inc*, 189 DPR 414, 430 (2013); *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 128 (2012); *Mejías Montalvo v. Carrasquillo Martínez*, *supra*.

En particular, la Regla 36.1 del referido cuerpo legal, 32 LPRA Ap. V, R. 36.1, provee para que un demandante pueda presentar una moción de sentencia sumaria fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Bobé v. UBS Financial Services Incorporated of Puerto Rico*, 198 DPR 6, 20 (2017); *Oriental Bank & Trust v. Perapi S.E.*, 192 DPR 7, 25 (2014). Véase, además, *Zapata Berríos v. J.F. Montalvo*, *supra*, pág. 452. En consecuencia, podrá dictarse sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios

y admisiones ofrecidas, junto a las declaraciones juradas -- si las hubiere -- surge que no existe una controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia de estricto derecho. 32 LPRA Ap. V, R. 36.3; *Pepsi-Cola Manufacturing v. Mun. Cidra et al.*, 186 DPR 713, 755-56 (2012); *Piovanetti García v. Touma*, 178 DPR 745, 775 (2010). Véase, además, *Viruet Candelaria v. City of Angels,* 194 DPR 271, 283 (2015). No obstante, el tribunal no tendrá que considerar aquellos hechos que no han sido específicamente enumerados y que no tienen referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia. 32 LPRA Ap. V, R. 36.3.

A modo de resumen, una moción de sentencia sumaria no procederá cuando: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *Szendrey v. Consejo de Titulares del Condominio Metropolitan Professional Park*, 184 DPR 133, 167 (2011); *Pepsi-Cola Manufacturing v. Mun. Cidra et al.*, *supra*, pág. 757; *Vera Morales et al. v. Dr. Bravo Colón*, *supra*, págs. 333-34.

En esa dirección, la Regla 36.3(b), 32 LPRA Ap. V, R. 36.3, esboza las exigencias que deberá cumplir aquella parte

que se opone a que se dicte sentencia sumariamente. Así, por ejemplo, la contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días a partir de su notificación y, como primer requisito, deberá contener -- al igual que la solicitud presentada por la parte promovente -- una exposición breve de las alegaciones de las partes, los asuntos litigiosos o en controversia y la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria. *Íd.*

Asimismo, la precitada regla requiere a la parte que se oponga a dicha solicitud el cumplimiento con ciertas exigencias adicionales. En primer lugar, ésta debe presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *Íd.* Además, la moción en oposición contendrá una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible donde se establezcan los mismos. *Íd.* Por último, deberá contener las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. *Íd.*

Cónsono con lo anterior, deberá refutar los hechos materiales que están en disputa mediante la presentación de evidencia sustancial. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013); *Nieves Díaz v. González Massas*, *supra*, pág.

848; *Jusino Figueroa v. Walgreens of San Patricio*, 155 DPR 560, 577 (2001). Es decir, la parte que se opone no puede descansar en meras alegaciones. *Meléndez González v. M. Cuebas*, 193 DPR 100, 136 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Véase, J. A. Cuevas Segarra, *Tratado de derecho procesal civil*, San Juan, Pubs. JTS, 2011, T. I, pág. 1041. Lo anterior, debido a que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. *Abrams Rivera v. ELA,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, *supra*, pág. 848; *Ramos Pérez v. Univisión*, *supra*, pág. 214.

No empece a ello, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si verdaderamente existe una controversia sustancial sobre hechos esenciales y materiales. *Mun. de Añasco v. ASES et al.*, *supra*, pág. 327; *Jusino Figueroa v. Walgreens of San Patricio*, *supra*, pág. 578; *Piovanetti García v. Touma*, *supra*, pág. 774. Dicho de otro modo, la moción de sentencia sumaria procederá si el juzgador "[q]ueda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos

resulta innecesaria". *Mun. de Añasco v. ASES et al.*, *supra*. Véase, además, *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 555-56 (2011).

Valga señalar que, al momento de evaluar la procedencia de una sentencia sumaria, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020); *Gonzalez Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019); *Meléndez González v. M. Cuebas*, *supra*, pág. 115. Por esta razón, reiteradamente hemos expresado que "[e]n el proceso de evaluar una sentencia sumaria dictada por el foro primario, los tribunales revisores v[enimos] llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3". *Rivera Matos et al. v. Triple-S et al.*, *supra*. De encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Gonzalez Santiago v. Baxter Healthcare*, *supra*; *Meléndez González v. M. Cuebas*, *supra*, pág. 118.

IV.

Por último, conviene recordar que en nuestro ordenamiento jurídico los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia.

*SLG Torres Matundan v. Centro Patología*, 193 DPR 920, 933 (2015); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-71 (2013); *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Lo anterior, como norma general, prohíbe que un tribunal apelativo sustituya las determinaciones de hechos de un foro inferior. *SLG Torres Matundan v. Centro Patología*, *supra; Pueblo v. García Colón I*, 182 DPR 129, 165 (2011). Por lo tanto, los foros revisores no debemos intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. *SLG Torres Matundan v. Centro Patología*, *supra*. Véase, además, *Dávila Nieves v. Meléndez Marín, supra; Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean International News*, 151 DPR 649, 664 (2000).

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nuestra consideración.

V.

A.

Como mencionamos anteriormente, en el caso que nos ocupa, -- uno que se da en el contexto de las servidumbres en equidad -- en síntesis, **los demandantes sostienen que el Tribunal de Apelaciones erró al utilizar como fundamento para revocar la *Sentencia* dictada por el Tribunal de Primera**

**Instancia presuntas controversias de hechos que en realidad son controversias de derecho**. Asimismo, arguyen que el foro apelativo intermedio tomó en consideración hechos inmateriales, algunos de los cuales no están en controversia. Les asiste la razón.

Así pues, por la importancia que tiene para la correcta disposición del presente caso, comenzaremos discutiendo una a una las presuntas controversias de hechos -- que dieron paso a que el Tribunal de Apelaciones revocara la bien fundamentada *Sentencia* emitida por el Tribunal de Primera Instancia -- según éstas fueron consignadas por el foro apelativo intermedio. Al realizar dicho análisis, notarán que, en la causa de epígrafe, verdaderamente no existen hechos en controversia, por lo que solo procede aplicar el derecho. Veamos.

De entrada, atenderemos las determinaciones de hechos #1, #2 y #13, que presuntamente están en controversia, según esbozadas por el foro apelativo intermedio, a saber:

(1) Si las condiciones restrictivas impuestas por la servidumbre en equidad fueron abandonadas y/o renunciadas y/o modificadas a tal grado, que se tornaron están [sic] inoperantes e inservibles.

(2) Si en efecto, los cambios radicales en el vecindario de la Urb. Santa María ameritan descartar las condiciones restrictivas impuestas por la servidumbre en equidad.

(13) Si por décadas, los residentes de las urbanizaciones de UNDARE han tolerado los cambios que han modificado las condiciones restricciones [sic] de dicho vecindario.

Examinadas estas tres (3) primeras expresiones, consideramos que el Tribunal de Apelaciones erró al catalogar las mismas como hechos en controversia, pues, para responder lo anterior, bastaba con aplicar los criterios establecidos por la jurisprudencia a la prueba ya desfilada ante el Tribunal de Primera Instancia. Esto es: 1) si los cambios convirtieron las restricciones en una carga irrazonable y opresiva para el dueño del predio sirviente; 2) si destruyeron el valor que de otro modo tendría la restricción para los dueños de los predios dominantes; y 3) si estos cambios frustran por completo y permanentemente el propósito para el cual se establecieron las condiciones restrictivas. Es decir, **se trata de controversias de estricto derecho**, que bien se responden a la luz de la evidencia incontrovertida que consta en el expediente así como de lo observado por el foro primario en la inspección ocular que, como sabemos, es merecedor de gran deferencia.

Por otra parte, el foro apelativo expresó que presuntamente estaba en controversia lo siguiente:

(3) Si las condiciones restrictivas impuestas por la servidumbre en equidad, de estar vigentes, afectan a las propiedades que se encuentran fuera del control de acceso y perímetro de la Urb. Santa María.

(5) Si la servidumbre en equidad provee, como excepción, la obtención de los permisos.

(6) Si las condiciones restrictivas proveen para el uso al cual el apelante destina el inmueble.

(7) Si el uso propuesto al inmueble del apelante (arrendamiento a largo plazo o casa de apartamentos) está reñido con las condiciones restrictivas impuestas por la servidumbre en equidad.

Nuevamente, falla el Tribunal de Apelaciones en considerar lo anterior como controversias de hechos. Ello así, debido a que, de una lectura de las *Condiciones restrictivas de construcción y uso a favor de la Corporación Reparto Santa María Incorporado*, según estas fueron inscritas en el Registro de la Propiedad, así como de la Certificación Registral 2018-014918-CERT, podemos expresarnos en cuanto a las interrogantes antes mencionadas.

Así, de los referidos documentos surge diáfanamente la aplicabilidad de las condiciones restrictivas a la propiedad núm. 13958 perteneciente a Rad-Man, y que las mismas limitan el uso que se le puede dar a ésta a uno residencial y unifamiliar, teniendo como excepción aquellos solares que la Junta de Planificación -- mediante el correspondiente permiso -- clasifique como comercial. Por tanto, no estando en controversia que Rad-Man subdividió su propiedad en múltiples apartamentos, es claro que dicho uso está en contravención con el carácter unifamiliar que la servidumbre en equidad bajo estudio exige.

Asimismo, el foro apelativo intermedio, en su determinación de hecho #10 razonó que estaba en controversia:

(10) Si en efecto, de la inspección ocular se identificaron propiedades fuera del

perímetro del control de acceso que hayan
sufrido cambios de uso residencial a uso
comercial, aun cuando mantienen la
clasificación R-1 y R-2. Además, si surge
que la propiedad del apelante queda
circundante [a] propiedades que han sido
destinadas a uso comercial.

Dicho foro erró al así hacerlo. Y es que, de los documentos que obran en el expediente ante nuestra consideración -- así como de lo observado por el foro primario -- podemos constatar que los mencionados comercios se encuentran en la periferia de UNDARE y no colindan con el inmueble de Rad-Man. Mas bien, éstos ubican en la Ave. de Diego y frente a la PR-177 en la calle Romerillo, mientras que la propiedad de Rad-Man está localizada en la Calle Sauco esquina Calle Narciso. En los alrededores del inmueble de Rad-Man ubican otras residencias, el parque recreativo de la Urb. Santa María, dos (2) escuelas y una (1) iglesia, éstas últimas producto de las variaciones de usos permitidas para los distritos R-1. Como cuestión de hecho, las determinaciones del Tribunal de Primera Instancia a esos efectos fueron acogidas por el Tribunal de Apelaciones.

De otro lado, contrario a lo señalado por el foro apelativo intermedio, en el presente caso no está en controversia lo establecido por dicho Tribunal en la determinación de hecho #4 y la #12 -- la cual, a su vez, resulta inmaterial -- determinaciones que rezan de la siguiente manera:

(4)    Si la propiedad del apelante se encuentra
       fuera del control de acceso y perímetro

de la Urb. Santa María y si le es de aplicación las condiciones restrictivas que afectan a las propiedades que [están] sitas dentro del [sic] dicho control de acceso y perímetro de las Urbs. Santa María, San Francisco y San Ignacio.

(12) Si el apelante ha sido discriminado por hacer valer en su propiedad, las condiciones restricciones [sic], a pesar de que ésta ubica fuera del control de acceso y en la periferia de la Urb. Santa María, mientras los apelados ignoran a otras propiedades que operan comercios con una zonificación R-1 y R-2 o violan la altura permitida por la servidumbre o mantienen estructuras no permanentes.

Sobre lo anterior, basta con señalar que, tras evaluar los documentos que obran en autos, observamos que una de las entradas a la propiedad -- aquella que ubica en la Calle Sauco con la cual la propiedad hace esquina -- se encuentra fuera del portón de control de acceso, mientras que la entrada ubicada en la Calle Narciso sí está dentro del referido portón; evidentemente, la misma se encuentra dentro del perímetro de dicha urbanización. Empero, incluso cuando ello es un hecho incontrovertido, dicho asunto resulta inmaterial para disponer de este caso pues, conforme mencionamos, la propiedad de Rad-Man está gravada por las condiciones restrictivas a la cual hemos hecho referencia y el análisis que nos corresponde realizar es si éstas quedaron inoperantes en virtud de los cambios en el vecindario alegados por el recurrido.

Además, el Tribunal de Apelaciones entendió que era necesario dilucidar en un juicio en su fondo, las siguientes interrogantes:

(8) Si las necesidades de los residentes de las viviendas que ubican dentro del control de acceso son diferentes a aquellas de los [que] residen fuera de dicho control.

(9) Si las necesidades y uso de las propiedades fuera del control de acceso cambiaron, a pesar de tener clasificación R-1.

Erró, una vez más, el foro apelativo intermedio al concluir lo anterior. Y es que, conforme a la normativa previamente discutida, resulta inmaterial auscultar si las necesidades de quienes residen dentro del control de acceso son diferentes a las de aquellos que quedaron fuera de éste, ello ya que un cambio en las condiciones económicas del área circundante, que afecte el valor en el mercado de aquellas propiedades que quedaron fuera del control de acceso o que colindan con las fincas periferales, no justifica descartar las condiciones restrictivas a las cuales están sujetas.

Por otra parte, precisa señalar brevemente que el Tribunal de Apelaciones también encontró como controvertida la determinación de hecho #11, que lee como sigue:

(11) Si el uso para el cual el apelante ha destinado su propiedad es para uno de hospedería u hostelero o si está destinado para alquiler a largo plazo.

En cuanto a ello, nos limitaremos a indicar que, aun cuando Rad-Man ha expresado a lo largo de sus comparecencias

que subdividió los apartamentos para arrendarlos a largo plazo, mientras que los demandantes arguyen que lo hizo con el propósito de alquilarlos a corto plazo, lo cierto es que ello es inmaterial en lo que respecta a la causa de epígrafe, por dos razones. Nos explicamos.

Primero, es evidente que Rad-Man ha actuado en contravención de la servidumbre en equidad al convertir su residencia en una multifamiliar, por lo que el interdicto y sentencia declaratoria presentada por los demandantes resulta procedente. Esto, con independencia de si lo subdividió para utilizarlo como hospedería o, por el contrario, para arrendarla a largo plazo.

Sin embargo, incluso cuando Rad-Man estuviese arrendando los apartamentos a corto plazo -- variando así el uso del inmueble a uno comercial -- éste no está autorizado a operar como tal, pues no cumplió con la excepción dispuesta en las condiciones restrictivas. En otras palabras, no surge de los documentos que obran en autos -- ni de las alegaciones -- que este haya obtenido la correspondiente reclasificación por parte de la Junta de Planificación convirtiendo el solar en uno comercial, por lo que también estaría violando las servidumbres en equidad.

En fin, aclarado lo anterior, es forzoso concluir que, en el presente caso, no existen hechos materiales que se encuentren en controversia. Restaría, pues, evaluar los

hechos incontrovertidos a la luz del derecho aplicable, según lo hemos discutido previamente.

C.

Establecido que, en lo que respecta a la causa de epígrafe, no existen hechos materiales en controversia, procedemos entonces a disponer del presente caso de conformidad con la normativa que gobierna estos asuntos. A esos fines, debemos constatar si los presuntos cambios ocurridos en el vecindario son cambios radicales que ameriten descartar las condiciones restrictivas que hemos discutido. **Adelantamos que no lo son.**

En esencia, Rad-Man plantea que son dos (2) los cambios presuntamente acaecidos en la Urb. Santa María que dejaron sin efecto las servidumbres en equidad, a saber: 1) la presencia de varias residencias dentro de la referida urbanización cuya altura excede aquella permitida por las condiciones restrictivas; y 2) la existencia de locales comerciales en las áreas circundantes.

En cuanto al primero de éstos alegados cambios expresados por Rad-Man, basta señalar que en la vista ocular celebrada por el foro primario, se constató que de las decenas de residencias que componen la Urb. Santa María, solo tres (3) propiedades estaban en incumplimiento con la altura exigida por las condiciones restrictivas; entiéndase dos niveles y medio. Ahora bien, dicho foro también observó que las fachadas de las propiedades sitas en la referida

urbanización eran tan variadas que no se podía concluir que dicha alteración en la altura constituía un cambio radical.

De otra parte, en cuanto al segundo de los presuntos cambios señalados por Rad-Man, disponemos de éste dejando claramente establecido que, los locales comerciales a los que la referida corporación hace referencia no colindan con la propiedad de este último sino que se encuentran en las calles periferales a UNDARE. Estos tienen sus entradas hacia las vías públicas antes mencionadas -- es decir, en la Ave. de Diego y frente a la PR-177 en la calle Romerillo -- y con acceso directo y sin barreras, razón por la cual están expuestos al desarrollo acontecido en la zona ya que existen comercios aledaños que no están sujetos a las condiciones restrictivas. Por el contrario, en el área interna de UNDARE se mantiene el uso residencial y unifamiliar.

Siendo ello así, a todas luces, lo anterior no tuvo el efecto de -- conforme lo exige la normativa antes expuesta, para dejar sin efecto una condición restrictiva -- destruir el valor que tiene la restricción para los dueños de los predios dominantes ni de imposibilitar los fines que perseguía la servidumbre, a saber: la belleza, comodidad y seguridad del reparto residencial de la Urb. Santa María, ventajas de las cuales los residentes que componen UNDARE aún se benefician. Salvaguardar dichos propósitos tampoco constituye una carga irrazonable y opresiva para Rad-Man.

Cónsono con lo antes expuesto, resolvemos que, en el presente caso, no se demostró la ocurrencia de cambios radicales que hayan modificado o extinguido las servidumbres en equidad aquí en controversia. Recordemos que si el área gravada no se ha deteriorado, de ordinario no debemos dejar sin efecto una restricción porque han ocurrido cambios en la periferia. En consecuencia, tenemos la obligación de preservar la autonomía de la voluntad de las partes contratantes y evitar que las restricciones se extingan mediante un proceso gradual de abrogación que empieza con los solares al borde del área restringida y se extiende -- paso a paso -- hasta las porciones o solares situados en el centro de los terrenos restringidos. Se cometieron, pues, los errores señalados.

VI.

Por los fundamentos antes expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones y se reinstala en su totalidad la *Sentencia* dictada por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Fernández Martínez,
María Bernal Echeandía
por sí y en representación
de la Sociedad Legal de
Gananciales; Asociación
Recreativa de Residentes de
la Urbanización Santa María,
Inc.; UNDARE, Inc.

    Peticionarios

        v.

RAD-MAN San Juan III-D,
LLC.; BETA, OMICRON, ZETA

    Recurrido

CC-2019-0928   *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 17 de noviembre de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones y se reinstala en su totalidad la Sentencia dictada por el Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre sin opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo